MAE EDWARDS ET AL., Appellants, v. AL FRESCO ADVERTISING COMPANY, Employer, and CONSOLIDATED UNDERWRITERS, Insurer.—100 S. W. (2d) 513.

Division One, January 5, 1937.

*Edward C. Friedewald* for appellants.

*Fordyce, White, Mayne & Williams* and *G. Carroll Stribling* for respondents.

FERGUSON, C.—This is an appeal from the judgment of the Circuit Court of St. Louis County affirming an award of the Workmen's Compensation Commission denying a claim under the Workmen's Compensation Act for death benefit made by appellant Mae Edwards, the widow of Roy Edwards, deceased, who, at the time he was killed in an automobile collision, was employed by respondent Al Fresco Advertising Company.

Deceased left surviving, his wife, claimant herein, and a minor child, Roy, eight years of age. It was stipulated that deceased's "average weekly earnings during the year immediately preceding" his death was $52. Computed according to the provisions of Section 3319, Revised Statutes 1929, the total death benefit sought and involved exceeds $7500 and therefore our jurisdiction of the appeal.

The Al Fresco Advertising Company maintained a large number of advertising signs at various points upon roads and streets in St. Louis County, most of which were electrically illuminated. Edwards' duties as an employee of the advertising company were to keep the signs and the mechanism thereof in repair, wind the auto-

matic clocks which regulated the lighting of the lights of the illuminated signs, and making a nightly patrol or inspection of all the signs to see that the lights were "working properly." The clocks were set or timed to turn on the lights daily "at dusk" which on the date of the accident resulting in Edwards' death, April 19, 1934, was between seven-thirty and seven-forty-five P. M. Edwards was supposed to commence the nightly patrol at about the time the lights were turned on. It required about two and one-half hours to make the inspection. Edwards owned an automobile which he used in carrying on this work. The evidence discloses the following facts and and circumstances. Edwards and his family resided on Arden Avenue, in Pine Lawn, St. Louis County. About one o'clock P. M. of the date mentioned (Thursday) Edwards went in his automobile with two friends, Clark Walton and Joe Sisk, to the "northernmost end of St. Louis County on the Missouri River" to buy some fish "for Friday." At the point of destination they purchased the fish and then decided to go to "Joe Hobath's," which it seems was a recreation resort in the north part of St. Louis County. They arrived at Hobath's about two-thirty P. M. and remained there until "about eight o'clock." The evidence as to time however indicates that it may have been after eight o'clock when they left Hobath's. Walton stated that during the five and one-half hours or more spent at Hobath's they "fooled around," "had a couple of small beers and a couple of sandwiches" and "bowled." Upon arrival at Hobath's the fish, purchased at the Missouri River, were taken from the automobile and "put on ice." Leaving Hobath's about eight-thirty or later, with Edwards driving the automobile, they went to the home of Sisk on the Bellefontaine Road a distance of about four miles. A stop of "five or ten minutes" was made at the Sisk home and Edwards and Walton then continued their return journey. No very plausible explanation is made as to why at this point Walton took over the driving of the automobile, however, he drove the automobile from the Sisk home to the point of the accident. The northernmost of the signs, which it was Edwards' duty to nightly inspect, was at the corner of Taylor Avenue and West Florissant Avenue or 4500 West Florissant, a distance by the most direct route of 8.4 miles from the Sisk home. Walton testified that he and Edwards left the Sisk home intending to make an inspection trip or patrol of the signs going first to the nearest or northernmost sign, located as noted at the corner of Taylor and West Florissant Avenues, and that he drove the automobile, though they were 8.4 miles from the nearest sign at the time, in order that Edwards could "look at the signs." This explanation challenges attention when it is recalled that it was customary for Edwards to nightly drive this automobile alone over a circuitous route inspecting a large number of signs, a trip requiring

at least two and one-half hours. The shortest and most direct route from the Sisk home to this northernmost sign at 4500 Florissant Avenue was south down Bellefontaine Road into Broadway to Taylor Avenue and one block west to 4500 West Florissant where the sign was located. But that route was not followed by Walton and Edwards who instead drove south on Bellefontaine Road to the Jennings Station Road and turned west (or southwest) on that road. From the Bellefontaine Road the Jennings Station Road runs in a general southwesterly direction to and across the Wabash railroad tracks, thence in a more southerly direction to and across West Florissant Avenue at 7000 West, and continues to or near the Edwards home. The shortest and most direct route from the Sisk home to the Edwards home would be over this Jennings Station Road. However to go from the Sisk home to the sign at 4500 West Florissant via Jennings Station Road they would turn aside from the shortest and most direct route, travel southwest and south to West Florissant Avenue coming into that street at 7000 West and then travel east on West Florissant to 4500 West. The distance from the Sisk home, the starting point, to the sign by this circuitous route is one and one-half miles farther than by the direct route down Bellefontaine Road into Broadway, etc., above described. Turning from this direct route onto the Jennings Station Road Walton drove over that road to a point ''just over'' (south of) the Wabash tracks where the automobile ''got off the road'' and ''hit a pole.'' Edwards sustained injuries which caused his death. It will be noted they had not yet reached West Florissant Avenue and that they were traveling the direct route to the Edwards home. Walton testified however that at the time they were en route to the sign on West Florissant, at 4500 West. The driver of ''a service car'' who came upon the scene shortly after the accident testified that he and Walton placed Edwards in his ''service car,'' that Walton said: ''I want to get a bundle out of the car'' (meaning the Edwards automobile) and that ''he came back with some fish and put them in my service car;'' and that on the way to the hospital Walton said they had gone after some fish ''and were going home.'' The distance from the scene of the accident to the Edwards home was 2.4 miles and to the sign at 4500 West Florissant 3.2 miles. No explanation appears in the record as to why, if it was their intention to go to the sign at 4500 West Florissant, Edwards and Walton would turn away from the shortest and most direct route to that point, travel southwest and south enter West Florissant at 7000 West and then travel directly east to reach the sign, a distance one and one-half miles farther. On the other hand all the circumstances considered and recalling that Walton and Edwards had a supply of fish in the automobile, that during the five and one-half or six hours they had spent at Hobath's

they had kept the fish on ice and that at the time of the accident they were pursuing the admittedly shortest and most direct route to the Edwards home and had turned off of and away from the direct route to the northernmost sign, the inference that they were at the time en route to the Edwards home seems warranted.

The commission made a finding, that the "alleged accident did not arise out of and in the course of his (Edwards") employment," and an award in favor of the employer and insurer. [Sec. 3301, R. S. 1929.] The Circuit Court of St. Louis County affirmed the award. The sole assignment of error made here is: "There was not sufficient competent evidence in the record to warrant the making of the award." Citing numerous decisions of this court so holding we said in Shroyer v. Missouri Livestock Commission Co., 332 Mo. 1219, 61 S. W. (2d) 713: "The commission's finding of facts and award have the force and effect of the verdict of a jury. . . . Hence, in determining whether the evidence sustained the commission's finding respondent is entitled to a consideration of the competent evidence most favorable" to it "together with all reasonable inferences to be drawn therefrom in support of the finding." If upon a consideration of the competent evidence, and the reasonable inferences therefrom, in the light most favorable to the award, it appears that there is any substantial evidence to warrant the finding and award of the Commission such finding is binding and conclusive and questions of the weight or preponderance of the evidence or the credibility of the witnesses cannot be considered on appeal. [Crutcher v. Curtiss-Robertson Airplane Mfg. Co., 331 Mo. 169, 52 S. W. (2d) 1019.] Applying these rules to the facts and circumstances developed by the evidence our conclusion is, as heretofore indicated, that the record discloses substantial evidence to support the finding of the commission. Appellant states the sole issue of fact to be: "At the time of the accident was Roy Edwards going to look after a sign in the course of his employment, or was he going to his home in Pine Lawn." We think that undisputed facts and circumstances in evidence warrant the conclusion, which was evidently reached by the commission, that at the time of the accident Walton and Edwards were en route to the Edwards home notwithstanding Walton's bare statement that they were on their way to the sign at 4500 West Florissant. It follows that the judgment of the circuit court should be affirmed. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.