Frances GENNARI, Shirley L. Gennari, Roger L. Gennari and Nelson E. Gennari, Appellants,

v.

NORWOOD HILLS CORPORATION, d/b/a Norwood Hills Country Club, Employer, and Aetna Casualty and Surety Company, Insurer, Respondents.

No. 46499.

Supreme Court of Missouri,

Division No. 2.

March 9, 1959.

Motion for Rehearing or to Transfer to Court En Banc Denied April 13, 1959.

William G. Phillips, St. Louis, for appellants.

Luke, Cunliff & Wilson, St. Louis, for respondents.

STORCKMAN, Presiding Judge.

This claim for maximum ·death benefits under the Missouri Workmen's Compensation Act was filed by the widow and three dependent children of the deceased employee. The referee who heard the claim and the Industrial Commission on review found against the claimants-dependents and a final award was made denying compensation. On appeal the Circuit Court of St.

Louis County sustained the final award of the Industrial Commission and the claimants appealed to this court.

The employee Joseph Gennari was regularly employed as a pastry cook by the Sheraton Hotel in St. Louis. The Norwood Hills Corporation, doing business as Norwood Hills Country Club, the alleged employer, operated the Norwood Hills Country Club in St. Louis County. The manager of the country club contacted Mr. Gennari and engaged him for a minimum fee of $25 to carve ornamental figures out of ice for table decorations at a dinner being held at the country club in connection with the Missouri State Women's Golf Tournament.

On July 20, 1954, Mr. Gennari went to the country club to do the work. According to the parties' stipulation, the outside temperature at 4:30 p. m. on that day was 102 degrees. Mr. Gennari spent a portion of the afternoon in a refrigerator room at the club house carving the decorative ice figures with special tools and equipment which he furnished. At about 5 p. m. Mr. Gennari came out of the room, walked about thirteen steps, staggered, and started to fall, but was caught and assisted to a chair by an employee of the club who asked him if he was ill. Mr. Gennari responded, "Yes"; but was unable to say anything more. He was taken to the St. Louis County Hospital where he died about 3 o'clock the next morning.

Norwood Hills Country Club denied that it was a statutory employer of Mr. Gennari within the purview of § 287.040, but the Industrial Commission found that it was and that Mr. Gennari "was performing services for his said employer on their premises at said time." The Industrial Commission further found that a cerebral hemorrhage caused the employee's death, but that it was not the result of an accident arising out of or in the course of his employment; and that his death was not in any way connected with the extreme changes in temperature encountered when he left the refrigerated room in which he had been working.

Maximum death benefits under the act were claimed. After Mr. Gennari's death, the Norwood Hills Country Club sent his widow a check for $40 in payment of his services. In the claim for compensation the employee's average weekly wages were stated to be "in excess of $52.50," which would have supported an award of a single death benefit of at least $10,900 including funeral expenses. The employment records at the Sheraton Hotel tended to prove that Mr. Gennari's earnings during the year immediately preceding his death, computed in accordance with § 287.250, were in excess of $100 per week and the single total death benefit calculated as provided in § 287.240 would be the maximum of $12,000 plus burial expenses of $400.

The claimants are Frances Gennari, widow, and three dependent children, Shirley L. Gennari born October 12, 1936, Roger L. Gennari born February 6, 1940, and Nelson E. Gennari born January 15, 1942. These children were all under 18 years of age when their father died on July 21, 1954, being approximately 17 years 8 months, 14 years 5 months, and 12 years 6 months, respectively. There were two other children over the age of 18 at the time of the death who were not claimed to be dependent.

■■ The appellants in their jurisdictional statement assert that this court is vested with jurisdiction on appeal because the amount in dispute is $12,400. The respondents do not contend otherwise. Nevertheless, we must determine the question because the monetary jurisdiction of the supreme court on appeal is not general, but is limited to cases where the amount in dispute, exclusive of costs, exceeds $7,500. Art. V, § 3, Const. of Mo.1945, V.A. M.S.; Crow v. Missouri Implement Tractor Company, Mo., 292 S.W.2d 573, 574 [1, 2].

The jurisdictional question in this type of case has been brought to the forefront by

a decision of the court en banc rendered since this case was argued and submitted. This case, Snowbarger v. M. F. A. Central Cooperative, Mo., 317 S.W.2d 390, reaffirms this holding of Stuart v. Stuart, 320 Mo. 486, 8 S.W.2d 613, 614: "We are on firmer ground in holding, as we do, that the appellate jurisdiction of this court, on the ground of the amount in dispute, attaches when, and only when, the record of the trial court affirmatively shows that there is involved in the controversy, independent of all contingencies, an amount exceeding $7,500, exclusive of costs."

The widow of Mr. Snowbarger, the sole dependent, had been allowed a "single total death benefit," § 287.240(2), in the amount of $8,535, payable in weekly installments; however, less than $7,500 had become due and payable at the time the appeal was taken. The court held the jurisdictional amount was not affirmatively shown, "independent of all contingencies," because the award might be terminated by the death or remarriage of the widow before a sum of $7,500 became due and payable. Section 287.240(4) (a) provides "that on the death or remarriage of a widow, the death benefit shall cease unless there be other total dependents entitled to any unpaid remainder of such death benefit under this chapter." In the Snowbarger case there were no total dependents other than the widow.

The present case is distinguishable from Snowbarger in that dependent children are parties claimant together with the dependent widow. Section 287.240 RSMo 1949, V.A.M.S. provides, inter alia, that a wife whose husband was legally liable for her support and a child or children under the age of 18 years "shall be conclusively presumed to be totally dependent for support upon a deceased employee and any death benefit shall be payable to them, to the exclusion of other total dependents." The section further provides: "In case there is a wife * * * and a child or more than one child thus dependent, the

death benefit shall be divided among them in such proportion as may be determined by the commission after considering their ages and other facts bearing on such dependency." The original enactmen': did not provide for the initial division of the death benefit among the wife and children; the children's rights were secondary to those of the widow. See § 21(d), Laws of Missouri 1925, p. 388; Laws of Missouri 1927, p. 503; and Newman v. Rice-Stix Dry Goods Co., 335 Mo. 572, 73 S.W.2d 264, 265, 94 A.L.R. 751. Other dependents are provided for in § 287.240, but we have mentioned only the categories involved in this case.

■ A death benefit awarded to a dependent child of the deceased employee continues until all of the weekly installments have been paid and is not terminated when such child attains the age of 18. Murray v. Marshall-Hughes Co., 327 Mo. 88, 34 S.W.2d 34, 35[1]. This follows according to the Murray case from the fact that the statute, § 287.240, provides that the status of dependency, and hence the right to the benefit, is to be determined as of the date of injury and the award once made may not be discontinued for any reason not expressly mentioned in that section of the act.

■ Also the death of a dependent child does not terminate the compensation award; in case of such death the dependent child's personal representative is entitled to the unpaid portion of the award. Pfefer v. Winer & Saroff Commission Co., 227 Mo.App. 280, 49 S.W.2d 293.

■ The death benefit awarded a dependent widow abates upon her death or remarriage only if there are no total dependents entitled to the unpaid remainder of such benefit. § 287.240(4) (a). In this case there are dependent children to whom the award would go upon the widow's death or remarriage. Allen v. St. Louis-San Francisco R. Co., 338 Mo. 395, 90 S.W.2d 1050, 1055[8], 105 A.L.R. 1222;

Culberson v. Daniel Hamm Drayage Company, Mo., 286 S.W.2d 813, 820[17].

■ The dependency of the children must be determined as of the time of the injury causing the parent's death. § 287.-240(4) and (4) (b); Reneau v. Bales Electric Co., Mo., 303 S.W.2d 75, 81[4]; Pittman v. Scullin Steel Company, Mo., 289 S.W.2d 57, 63[12]. Having been so established, the dependency cannot be re-examined and discontinued as of a later date by reason of the death or maturity of the beneficiary or other contingency, because there is no statutory authority for so doing. Murray v. Marshall-Hughes Co., supra; Pfefer v. Winer & Saroff Commission Co., supra.

■ Where injury causes the death of an employee, compensation rights are determined by § 287.240 independently of any other part of the act except the sections referred to in § 287.240. Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S.W.2d 128, 132[6]. Since the award of death benefits cannot be abated or altered except as expressly provided in § 287.240, there appears to be no contingency in this case upon which the entire amount of the single death benefit claimed, if compensable, would not become due and payable.

■ Where the appeal in a workmen's compensation case is from an award denying compensation, the amount in dispute may be determined from the claim for compensation, the transcript of proceedings before the referee, the findings and award of the commission, and other pertinent parts of the record. Gillespie v. American Bus Lines, Mo., 246 S.W.2d 797, 799[1]; Smith v. General Motors Corp., Fisher Body, St. Louis Division, Mo., 189 S.W.2d 259; Edwards v. Al Fresco Advertising Co., 340 Mo. 342, 100 S.W.2d 513. The death benefit claimed is affirmatively shown by the record to be in excess of $7,500; therefore, this court has jurisdiction.

■ There is a plethora of competent and substantial evidence to support the finding that the immediate cause of the employee's death was a cerebral hemorrhage. Two of the three doctors offered by the claimants so testified; the other testified the primary cause of death was heatstroke and the cerebral hemorrhage was secondary. All three of the employer's medical experts testified the cause of death was a cerebral hemorrhage. The death certificate put in evidence by the claimants gave "Cerebral vascular accident," commonly known as a cerebral hemorrhage, as the disease or condition directly leading to death. "Malignant hypertension" was given as an antecedent cause of death. The occurrence of a massive cerebral hemorrhage was generally accepted as an established fact by the claimants in the examination of their witnesses and the conduct of their case. Dr. Birkle Eck, on behalf of claimants, testified he examined and treated Mr. Gennari in 1953 and found him suffering from moderately severe essential hypertension, commonly called high blood pressure, and arteriosclerotic changes in the peripheral vessels and vessels of the eyes. There was also a slight enlargement of the left ventricle of the heart and of the liver. When Dr. Eck last saw Mr. Gennari on September 17, 1953, his blood pressure was 160/104; the treatment prescribed was a mild sedative, a diet low in fat and a substance called rutin and ascorbic acid which was supposed to prevent hemorrhaging from weakened vessels.

■ The claimants contend that the Industrial Commission erred in not finding that the employee's pre-existing condition, hypertension and arteriosclerosis, was aggravated and his death hastened by the employee's going from the icebox having a temperature of between 30 and 40 degrees into the very hot outside temperature estimated by some witnesses to be between 102 and 105 degrees. The claimants correctly contend that the existence of a disease or disorder which does not impair

the employee's ability to work will not prevent a recovery under the compensation act if an accidental injury aggravates such disease to a degree of disability or accelerates death even though the particular accident would not have produced such a result in the case of a person not so afflicted. Conley v. Meyers, Mo., 304 S.W.2d 9, 13[6]; Garrison v. Campbell "66" Express Inc., Mo.App., 297 S. W.2d 22, 29[6]; Cheek v. Durasteel Co., Mo.App., 209 S.W.2d 548, 555[5].

The issue chiefly contested was whether the employee's movement from the refrigerated room where he had been working to the corridor of the club house where the atmosphere was very hot caused the cerebral hemorrhage thereby hastening his death. The testimony on this issue was conflicting. Dr. Eck testified the marked variation in temperature to which Mr. Gennari was subjected would be injurious to a man with vascular disease although it would be tolerated by a normal person. Dr. S. H. Pranger testified that " * * with the heat affect, the edema and the stimulation of the adrenal gland, the ultimate rising of the blood pressure, it would be natural to suppose that he had numerous blood vessels break in the brain." It was Dr. Pranger's opinion, however, that "the cerebral hemorrhage appears secondary to the heat stroke." Dr. Harold Selle, being in the club house at the time Mr. Gennari collapsed, was called to attend the employee and found his blood pressure was at a very high elevation, 230/150. Dr. Selle testified " * * * that the extreme change in temperatures to which he was subjected very probably was the precipitating cause" of the cerebral vascular accident suffered by Mr. Gennari.

On the other hand Dr. Charles W. Miller, testifying on behalf of the employer, was of the opinion that the change of temperature to which Mr. Gennari was subjected did not affect him in such a degree as to cause the cerebral hemorrhage; that it is the pressure inside blood vessels that causes them to rupture and

the employee's short exposure to the heat before the onset of the hemorrhage, if it had any effect, would cause the surface and peripheral blood vessels to dilate and thereby lower the blood pressure. Dr. Hollis N. Allen and Dr. John J. Hammond also testified to the same effect. Their opinions were that the change in temperature had "nothing to do with the cerebral hemorrhage," and that Mr. Gennari's "death occurred just as a natural course of the disease, hypertension and arteriosclerosis."

The appellants contend that the findings and award of the Industrial Commission are based upon incompetent medical testimony in that the hypothetical questions propounded to Doctors Miller, Allen, and Hammond assumed facts in the admission notes of the St. Louis County Hospital records which were erroneous. Complaint is made because the record at one place states that Mr. Gennari was "found unconscious at work" and at another that "H.P.I. Started suddenly as unconsciousness after having had drove a car with accompanying high temperature." A person reading the hospital record is prepared for this assault on good grammar and clear statement by the intern's prior admission note declaring that Mr. Gennari was admitted "in this hospital with chief complaint of unconsciousness." Regardless of what else might be said of the case history, we do not think it was productive of error in the compensation proceedings.

First it should be noted that the claimants put the hospital record in evidence without limitation or the exclusion of any portion and depended on it in some respects. At least one of claimants' medical witnesses testified that he had reviewed the hospital record and the history as given in the record and that his opinion was "based on the symptoms and signs that were shown in his hospital record and the past history of a relatively normal blood pressure." Furthermore, the only ob-

jection made by claimants on this score was during the examination of Dr. Hammond, the last of employer's medical witnesses. The question propounded was whether the change in temperature to which the employee was subjected caused the cerebral hemorrhage and the ground of the objection was that the conclusion of the hospital doctors that the death was due to a cerebral hemorrhage should be excluded from the hypothetical question. The existence of the hemorrhage was otherwise established and by claimants' own evidence. It was a necessary assumption in any question calling for an opinion as to whether the employee's death by hemorrhage was hastened by coming from a cold icebox into a hot room. It has not been demonstrated that any erroneous statements in the case history tainted the opinions of the medical experts or in any way affected the findings of the Industrial Commission. The claim of error is denied.

The Workmen's Compensation Act expressly excludes from its coverage death due to natural causes although occurring while the employee is at work; the happening of an "accident" must be proven. § 287.020(3); DeLille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834, 836[3]. The appellants cite us to a number of cases in which heat prostrations were determined to be accidental. These are not helpful on the facts of this case nor are the citations from other states where the compensation statutes are different.

 Our review is limited to a determination of whether the findings of the Industrial Commission are supported by competent and substantial evidence upon the whole record and we are not at liberty to substitute our judgment for that of the administrative tribunal unless the findings are clearly contrary to the overwhelming weight of the evidence. Lake v. Midwest Packing Co., Mo., 301 S.W.2d 834, 835[3]; Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647, 649.

"Where the ultimate question upon which the right to compensation depends largely resolves itself into which of two conflicting medical or scientific theories should be accepted, such issue is peculiarly for the determination of the Industrial Commission." Vollmar v. Board of Jewish Education, Mo., 287 S.W.2d 868, 872[4]. See also Cardwell v. White Baking Co., Mo., 299 S.W.2d 452, 454[3].

Our consideration of the entire record convinces us that the findings of the Industrial Commission are supported by competent and substantial evidence and that they should not be disturbed. Accordingly the judgment is affirmed.

All concur.