Bobby SPRINGETT, Respondent,

v.

ST. LOUIS INDEPENDENT PACKING COMPANY, a Division of Swift and Company, Security Mutual Casualty Company, Employer-Insurer-Appellants.

No. 32876.

St. Louis Court of Appeals.

Missouri.

April 16, 1968.

Motion for Rehearing and to Transfer to Supreme Court Denied Sept. 4, 1968.

Robertson, De Voto & Wieland, St. Louis, for employers-appellants.

Jack Randall, St. Louis, for respondent.

RUDDY, Judge.

In this action for benefits under the Workmen's Compensation Act claimant was awarded the sum of $5,385 (less $828.53 paid to the date of the award) for a perma-

nent partial disability, a healing period and medical aid. This appeal is from the judgment of the Circuit Court affirming the award of the Industrial Commission.

The employer in its first point contends that the award was not supported by competent and substantial evidence because claimant was his only witness as to the manner in which the alleged accident occurred and, since the testimony given by claimant is contradictory and conflicting, claimant has failed to prove a compensable injury.

The extent and scope of our review in a Workmen's Compensation case are well known and need no citation of authorities. It is our duty to determine whether, upon the entire record, the Industrial Commission could have made the findings and award it did make. We cannot substitute our own judgment on the evidence for that of the Commission. We must affirm the award if it is supported by competent and substantial evidence upon the whole record. In our review we may set aside the findings and award of the Commission only if they are clearly contrary to the overwhelming weight of the evidence. All the evidence and reasonable inferences deducible therefrom, must be viewed in the light most favorable to the findings and award. We must disregard all opposing and all unfavorable evidence to the award and this is true even though the findings of the Commission, if to the contrary, would also have been supported by the evidence. The weight of the evidence and the credibility of the witnesses are for the Commission only. If the competent evidence or permissible inferences are conflicting the choice rests with the Commission and is conclusive upon this court.

Mindful of the rules applicable to our review we state the facts. Claimant at the time of the occurrence in question was 21 years of age. His regular work at the time (July 25, 1963) was handling beef tongues, weighing three to five pounds. However, at times he would help a fellow employee lift boxes of bacon. The weight of these boxes varied from one hundred to one hundred and twenty-five pounds. The boxes were described as wooden crates—one foot in height, one and one-half feet in width and about three feet in length. Eight to nine sides or pieces of bacon were packed in a box. Five were placed "faced down" or flat in the box and three or four pieces (apparently depending on thickness) placed "on the side standing up on the edge of the box." The sides of bacon averaged nine to ten inches in width and twenty-four to twenty-eight inches in length. Claimant thought the bacon was wrapped in brown paper when in the box; other employees said it was wrapped in wax paper.

On July 25, 1963 while claimant was working on his regular job he experienced some trouble in the handling of the beef tongues. He sought the advice of his foreman and while looking for him Oscar Richardson asked claimant to help him stack the bacon boxes. It appears that before these boxes of bacon were stacked they would be weighed and placed upon a roller or skid and conveyed to the point where Richardson had the task of lifting them off of the roller and placing them in a stack. At the point where the box would be lifted from the roller the box was three feet off the floor. Richardson indicated that when four boxes were stacked the top of the stack would be about "shoulder level high with him." Richardson was six feet, one inch in height and had long arms and weighed two hundred and twenty pounds; whereas, claimant was five feet, eleven inches in height, had shorter arms and weighed one hundred and ninety pounds. During the hearing before the Referee claimant and Richardson were required to stand up, side by side, in order to permit the Referee to observe their respective physical sizes. In describing the area in which they worked when lifting these bacon boxes, Richardson said, "we don't have too much space to work."

Richardson testified that he would lift the first two boxes off the roller and place

them in a stack. After the second box was placed in the stack he needed help "because the boxes are heavy" and that was why he asked claimant to help him. Richardson further testified that "it was awkward to lift higher * * * after the second layer." This was because the third and subsequent boxes had to be lifted upwards. As said, at Richardson's request claimant proceeded to help Richardson with the lifting of the boxes of bacon. Claimant and Richardson started to lift the box off the roller and because Richardson was taller than claimant and had longer arms Richardson had to "come down" or stoop to "stay level" with claimant. Claimant did not grab the box on the end when he first "gripped it." He grasped the box in the middle because he thought that would balance the weight. He then placed his end of the box on the upper part of his leg. He then slipped his grip from the middle of the box to the end in order to lift it. About this time claimant's legs were bent and his knees were flexed in about a fifteen degree angle. The two men then started to raise the box together and Richardson raised his end faster than claimant causing the end Richardson was holding to be higher than the end claimant was holding. When Richardson pushed his end up to put it on top of the stack "the weight inside the box moved," the "weight in the box shifted," i. e., the bacon in the box moved to the end claimant was holding because the end Richardson was holding was higher. As a result most of the weight was on the end held by claimant causing claimant to lose his balance and be pushed back against a "stack of boxes" on the roller or scales. Claimant said he thought the bacon was not packed tight from end to end and was loose in the box which caused the shift of weight. After the weight shifted claimant felt a sharp pain in the lower part of his back. It was a real hard stabbing pain as if he had been stabbed with a knife. Claimant and Richardson then proceeded to pick up the second box and again plaintiff felt a sharp pain in the back. It was the same sort of pain he experienced on the occasion of raising the

first box. He said the weight shifted again when lifting the second box. Richardson then told claimant that he had better not try lifting any more boxes and that he should go to the doctor. Claimant did not go to the doctor immediately but returned to his regular job of handling the beef tongues. In less than an hour thereafter he started getting pain in his back and down his right and left legs. His foreman was called and he was assisted by two men to the medical department of his employer where he saw the nurse who gave him a shot for the pain. While he was lying down on a couch an investigator of the insurance company appeared and proceeded to take a statement from him in longhand. This statement was prepared by the investigator and was signed by the claimant and was offered in evidence by the employer. Claimant testified that he had a slight recollection that some man did take a statement from him on that date. However, he said " * * * This nurse gave me a shot and I don't remember too much about what happened after that." He did not remember reading over the statement and signing it. Thereafter employee was picked up by his father and taken to a hospital in Belleville, Illinois. Prior to the incident of July 25, 1963, claimant had an injury to his back which occurred in April of the same year. This injury caused an absence from his work of a couple of weeks, after which he returned and had no further troubles with his back until the incident of July 25, 1963. Several months prior to the incident of April 1963 he strained his back which he said was just stiff for a couple of days. After these couple of days until the time of April 1963 incident he had no pain in his back. Subsequent to claimant's injury on July 25, 1963 he had a laminectomy for an injured disc. Doctor Mishkin, an Orthopedic Surgeon, testified that claimant has a thirty percent permanent partial disability as a result of the trauma he sustained on July 25, 1963. All of the findings and rulings of the Referee were adopted by the Industrial Commission.

■ We see no need for an extended discussion to demonstrate that the aforesaid narration of facts taken from the record constitutes sufficient competent and substantial evidence to support the findings and award of the Industrial Commission.

■ The facts we have narrated concerning the lifting of the two boxes of bacon and the shifting of the bacon in the boxes causing claimant to lose his balance and to be pushed against a stack of boxes were taken from the testimony of claimant and are sufficient to show an unexpected or unforeseen event happening suddenly and violently. Such a showing constitutes an accident within the meaning of the Compensation Act, Section 287.020(2), RSMo 1959, V.A.M.S. and is compensable when an injury is produced. It is true that Richardson, testifying as a witness for employer, denied that the bacon shifted in the boxes and other witnesses for employer said the bacon could not move. However, this conflict with the testimony given by claimant was a matter for determination by the Industrial Commission. As we have said the weight of the evidence and the credibility of the witnesses are for the Commission. We point out that there was no evidence in the record to show that the movement and shifting of the bacon in the boxes was a common or routine happening or that it ever happened before and in this respect the facts in this case differ from those in Baker v. Krey Packing Co., Mo.App., 398 S.W.2d 185 where we denied recovery because the loins in the boxes shifted almost every time and was a normal occurrence in the performance of claimant's routine work.

■ Despite what we have said and held above, the employer contends that there is other testimony given by claimant which contradicts and conflicts with that which we have narrated above. In this connection employer in the argument portion of its brief states that "* * * Employee has testified to three different fact circumstances allegedly causing his back condition. Each version is different and if one is true, the others are not. The Commission should not speculate or guess which version is true." The employer in the argument portion of its brief does not expand or further enlarge on this charge and only cites cases which we find have no relevance to this assertion.

The only testimony shown in employer's statement of fact to support this contention are admissions of claimant at the hearing as to matters contained in his deposition. Claimant was referred to his deposition wherein he said, "'* * * We picked this box up and he (Richardson) is about a foot and a half taller than I am, and we was going about six feet high with the box and as we was setting the box down he let his end slip and all the weight came down on me, and I was up like this and I twisted my back and I felt a sharp pain. * * *'" Claimant guessed that he did give this answer in his deposition. Other answers to questions claimant admitted giving in his deposition are as follows: "'* * * Question. Well, when he dropped or let go of it his end did the box fall? Answer. It came down on me. It bounced off the stack and came onto me. Question. Onto you. I see. But did it ever fall to the floor? Answer. No, sir. Question. Did you stop it from falling? Answer. Yes, sir.'" These answers show no real contradiction or conflict with the essential facts as we have narrated them heretofore. The Commission could well have found that claimant's statement that "he (Richardson) let his end slip and all the weight came down on me" meant that the weight of the bacon inside of the box slipped from Richardson's end to claimant's end. This becomes more feasible and reasonable when it is read in context with the statement that "all the weight came down on me." Employer in his point says that the box came down on claimant. However, this is not correct because claimant said that the weight inside the box came down on him; that is, shifted to his end of the box. Also, we believe that the same meaning can be inferred from the answer that the weight came down on plaintiff and

"it bounced off the stack and came onto me." Here we see no conflict with claimant's testimony as to what happened at his end of the box when he was thrown off balance and injured. When this testimony taken from claimant's deposition is read in context with claimant's testimony as to what happened at his end of the box, we see no conflict or contradiction and it was up to the Commission to decide whether or not it could or would draw the inference we have suggested and we cannot interfere with their conclusion in the matter. Under no circumstances do the alleged inconsistencies negate or destroy the efficacy of claimant's testimony showing that the bacon shifted in the boxes causing claimant to lose his balance and be pushed against a stack of boxes. Employer also attaches some significance to the statement signed by the claimant which was taken and written by the insurance investigator while claimant was in the medical department of the employer. This was a long two page statement written in long hand and the pertinent part is as follows: "* * * I took hold of one end of one box and Richardson took hold of the other end and we put it on top of a stack about 5' high. When I helped Richardson put the first box up in the stack I felt a snap in my back and I got a small pain but it went away. I helped Richardson with a second box and I got another pain and Richardson said I had better stop. I did not lift any more boxes. I just got this pain in my back. I did not slip, trip or fall. I did not hit anything. * * *"

As heretofore shown plaintiff got a shot when he entered the medical department and, as he said, he did not remember too much about what happened after that and he did not remember reading over the statement and signing it. However, we see no conflict, except in one respect, with the testimony given by plaintiff. Of course this is assuming that claimant was in a position to give a clear and coherent statement. Claimant in his testimony said that he helped Richardson put the first box on the stack and said that he felt a pain in his back. He also gave in his testimony the circumstances that took place between the time he picked up the box and the time he felt the pain in his back. We see no real conflict between the statement and claimant's testimony. The prosaic term of "did not slip, trip or fall" obviously are the words of an experienced investigator and not those of a laborer. The only possible conflict with claimant's testimony, if the statement is to be believed, is that part wherein it says "I did not hit anything." However, this discrepancy, if it is to be believed, was for the determination of the Commission. We find no validity in this contention of employer.

During the hearing before the Referee employer sought to have Doctor Cozart, a plant physician of employer, testify from a medical record kept in the employer's plant which seemed to contain information concerning an examination of claimant by a Doctor Magee, another plant physician. This record contained a history allegedly given to the doctor by claimant as to how he was injured. Employer contends this history was admissible because it tends to contradict claimant's testimony as to how the injury occurred. Frankly, we see no contradiction. Employer also sought to have Doctor Cozart testify to a history given him by claimant. Prior to the hearing counsel for claimant asked employer in writing to furnish him with all medical records it had. The aforesaid plant medical record was not furnished. At the hearing claimant objected to any testimony from Doctor Cozart because he had not been furnished with the medical report within the meaning of Section 287.210(3) RSMo 1959, V.A.M.S. Subdivision 3 of the aforesaid section of the statute provides, inter alia, that the testimony of any physician who treated or examined the injured employee shall be admissible in evidence, but only if the medical report of such physician has been made available to all parties as in the section provided. It is provided that immediately upon receipt of notice of a setting of a date for the hearing "the par-

ties or their attorneys shall arrange, without charge or costs, each to the other, *for an exchange of all medical reports,* including those made both by treating and examining physician or physicians, to the end that the parties may be commonly informed of all medical findings and opinions." It is further provided that if any party fails or refuses to furnish the opposing party with the medical report or reports of the treating or examining physician or physicians as in the section provided, upon the objection of the party who was not provided with the medical report or reports, such physician or physicians *shall not be permitted to testify at the hearing.* Subdivision 5 of said section provides that the term complete medical report means the report of a physician *giving patient's history,* complaints, etc. We think the Referee correctly sustained claimant's objection to the testimony of Doctor Cozart because of employer's failure to furnish claimant with a medical report of its plant medical record as requested.

After employer's abortive attempt to have Doctor Cozart testify it then presented a registered nurse employed in the medical department of employer. Employer admits that the entries on the records from which she would have testified would have been the same as those sought to be elicited from Doctor Cozart. The Referee sustained claimant's objection to her testimony and correctly so for the same reason we assigned to the Referee's ruling in connection with the offered testimony of Doctor Cozart. The aforesaid statute would be meaningless if a nurse or medical librarian could supply the facts denied to the physician who acquired them. We point out that the Industrial Commission adopted all of the rulings of the Referee.

In view of what we have said the judgment of the Circuit Court affirming the Industrial Commission should be affirmed. It is so ordered.

ANDERSON, P. J., and WOLFE, J., concur.

## ON MOTION FOR REHEARING

PER CURIAM.

Employer, in its motion for rehearing contends that material matters of law and fact were overlooked "or misinterpreted by the Court" in applying Section 287.210 (3) and (5), RSMo 1959, V.A.M.S. to the medical records of the St. Louis Independent Packing Company in ruling that Doctor Cozart could not testify. In this connection it stresses the point that employer's medical records show that Doctor Cozart was not an examining or treating physician within the meaning of Section 287.210(3) and (5), RSMo 1959. It argues that claimant knew that the doctors of the employer were not treating or examining him for his back for which he was making a claim. It may be conceded that employer's doctors were not treating plaintiff, but, if they were not medical examiners of claimant, what were they? Certainly they were not acting in the role of mere investigators for employer and insurer. If they had any personal contact with claimant at the request of employer it must have been in the role and capacity of professional medical men. This must have been true of Doctor Cozart's contact with claimant when he obtained the statement excluded by the Commission. Employer's counsel in his initial questions propounded to Doctor Cozart qualified him as a medical expert. The initial questions pertained to the medical background of the witness. He was questioned by employer's counsel as to his medical education, internship, nature and length of private practice and the medical societies to which he belonged. Obviously, he was offered by employer as a medical witness. When claimant objected to his testimony on the ground that claimant had not been furnished a medical report by the witness or employer's counsel, counsel for employer told the Referee "* * * the testimony is relative to the medical condition of this man, * * *" thereafter adding, "* * * Doctor Cozart is offered in rebuttal by virtue of impeaching testimony as to a conversation

he has had with the claimant in this case. * * *" In an offer of proof counsel for employer said that if Doctor Cozart was permitted to testify he would say that "* * * he had a conversation with the claimant on or about April 17, 1964 * * *" and "* * * that at that time the claimant stated the recurrent back pain is a (sic) illness not due to any on plant injury. * * *" It should be pointed out that this conversation alleged to have taken place between claimant and Doctor Cozart did not appear on the medical record kept in the employer's plant. It is admitted by employer in its suggestions in support of its motion for a rehearing that Doctor Cozart is a company doctor. Doctor Cozart did admit that he made entries on the card contained in the employer's medical record. However, they were not entries concerning the aforesaid conversation. It is abundantly clear from the record before us that Doctor Cozart, at the time he had the conversation with claimant on April 17, 1964 was acting in the capacity of an examining physician for employer. Therefore, it was incumbent upon employer after receipt of notice of the setting of a date for the hearing to furnish claimant with a copy of a medical report of this examination, which report would and should contain any history given to the examining physician by the claimant. We think the statement sought to be elicited from Doctor Cozart by employer is a part of the patient's history obtained by the doctor when making the examination and would have been a part of a medical report of this examining physician.

■ Section 287.210 is one of the discovery statutes under the Workmen's Compensation Act which calls for "* * * an exchange of *all* medical reports, including those made both by treating and examining physician or physicians, *to the end that the parties may be commonly informed of all medical findings and opinions.* * *" The intent and purpose of this statute, as its language so clearly indicates, is that both employer and employee be commonly

informed of *all* medical findings and opinions and receive a report of all treating and examining physicians. In the instant case claimant asked employer to furnish him with all medical reports of examining physicians. No report was furnished of the examination made by Doctor Cozart, nor was any report furnished in connection with the treatment and examination of claimant by Doctor Magee, as shown by the medical record kept in employer's plant. As we pointed out in the opinion a failure or refusal to furnish claimant with these medical reports of the examining physicians barred the physicians from testifying at the hearing upon objection made by the party who was not provided with the required medical reports.

Employer contends that Doctor Cozart's proffered testimony of the conversation with claimant did not involve medical findings and opinions. It is a well known fact that all doctors take the history of a person they are examining, whether for purposes of treating or merely examining the person, in order to arrive at a correct diagnosis and prognosis. It is important for the examining doctor to know the circumstances under which the injury was received and the force applied to the injured part of the body by the accident. Another of employer's examining physicians, who testified, was Doctor Harry C. Morgan. He testified that it was important to obtain the history of an individual in the case of an injury to know the mechanism of the injury in assessing the extent of the injury and to learn something of the forces which were involved which produced it and something of the severity of the injury. We think the statement obtained by Doctor Cozart in his examination of claimant was a part of his effort to obtain a history of claimant's injury and therefore had a relationship to any medical findings or opinions that he may have formed as a result of his examination. The history obtained by a physician is a necessary part of the treatment or examination of the patient by the physician.

Employer also contends that Doctor Cozart and the registered nurse employed in the medical department of the employer should have been permitted to testify as to the content of the medical record kept in employer's plant on the ground that this record only contained " * * * brief, cryptic entries made on four by six inch cards to be kept in the medical department of * * * " the company. It contends that this is not a complete medical report as required to be furnished under subparagraph 3 of the aforesaid section of the statute. It makes little difference where the medical record was prepared and kept; whether in the office of the physician or in the plant of the employer. Additionally, it is unimportant that the record kept is of a brief and cryptic nature. There is little doubt that most, if not all, medical reports made by physicians are prepared from a medical record kept by the physician which contains only brief or cryptic entries as to the patient's history, complaints and the findings of the examining physician. There is little doubt that the medical reports required under the provisions of the statute in question are usually prepared from such a medical record kept in the physician's office or elsewhere. The physician in his medical report usually enlarges upon the cryptic notes contained in his medical record. The medical record in question kept in the plant of the employer shows that it was either prepared by or made under the supervision of Doctor J. S. Magee, who was one of employer's physicians. This record contained a history of how the accident occurred as given by claimant to the doctor and the emergency treatment furnished to claimant. While it is true that Doctor Magee was not offered as a witness for employer at the hearing, we think under the language of the statute involved, that it was incumbent upon employer to furnish a copy of a report from Doctor Magee of his examination and treatment as shown on the company's medical record, inasmuch as the statute called " * * * for an exchange of *all* medical reports * * *."

Employer makes a further contention that this is not only a medical record but a business record and is admissible if properly identified as a business record. Doctor Magee was not called as a witness and to permit employer to fail or to refuse to furnish a report of the history obtained from claimant and the treatment administered and to have Doctor Cozart or a registered nurse testify from the medical record as a business record would be a circumvention of the clear intent and purpose of the statute which provides for an exchange of *all* medical reports to the end that the parties may be commonly informed of all medical findings and opinions. In this connection we think it is of no significance whether the medical record is prepared in the employer's plant or in the office of the employer's physician. The language of the statutory provision does not leave employer or for that matter claimant free to determine what medical reports should be furnished and what should not be furnished. The statutory language clearly provides for an exchange of *all* medical reports. We think the statute provides a workable method for a full and complete revelation of all medical facts to all parties. We recognize that such a requirement interferes with the element of surprise, but we can not forget that the purpose of compensation hearings and all judicial hearings for that matter is a quiet search for the truth and records that may be of assistance in that process can not be made the subject of a game of hide and seek. We have extended our discussion of this point raised by the employer in its motion for rehearing because this section of the statutes has not been construed heretofore. Motion of employer and insurer for a rehearing and in the alternative to transfer the cause to the Supreme Court is overruled.