Alvin WEINBAUER, Respondent,

v.

GREY EAGLE DISTRIBUTORS and
Commercial Union Insurance
Company, Appellant.

No. 45541.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 25, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 13, 1983.

Application to Transfer Denied
Jan. 17, 1984.

Edward M. Vokoun, St. Louis, for appellant.

Richard S. McConnell, Jr., St. Louis, for respondent.

STEPHAN, Judge.

Workers' Compensation case. Appellant-employer Grey Eagle Distributors and the insurer (hereinafter collectively referred to as "appellant" or Grey Eagle) appeal from the circuit court's affirmance of the Industrial Commission's decision finding respondent-employee Alvin Weinbauer was permanently and totally disabled due to a work-related accident. We affirm.

Grey Eagle briefs four points relied on. First, Grey Eagle alleges that there was not sufficient competent evidence to warrant a finding that Weinbauer's injuries were caused or aggravated by the work-related accident. Second, Grey Eagle contends that the administrative law judge (ALJ) and the Industrial Commission, a majority of which adopted the ALJ's findings, erroneously excluded medical records under § 287.210–3 RSMo 1969. Third, Grey Eagle argues that if § 287.210–3 is applicable, the Industrial Commission erred in not granting Grey Eagle's request for a continuance so that compliance could be made with § 287.210–3. Fourth, Grey Eagle maintains that the Industrial Commission should have ordered an examination of Weinbauer by an independent, impartial physician.

The facts surrounding Mr. Weinbauer's injury may be briefly stated. Alvin Weinbauer was a truck driver for Grey Eagle, a beer distributor. On August 29, 1977, Weinbauer was unloading cases of canned beer from a truck. After taking some cases off the truck, Weinbauer reached up and pulled a case with his left hand. As he did so, the case became jammed on another case below. In order to free the case, Weinbauer jerked his left arm, experienced pain, felt his legs give out, fell backward and was caught by his helper.

The ALJ found the accident had permanently and totally disabled Weinbauer, who was 61 years old at the time of the accident. The ALJ awarded Weinbauer $95.00 per week for life, holding Grey Eagle liable for future medical care. The Industrial Commission and the Circuit Court affirmed the award.

Upon review of a case of this nature, both the Circuit Court and this Court are "bound to affirm the finding of [the] Commission majority if, after a review of the entire record in the light most favorable to that finding, the court believes the award is supported by substantial and competent evidence." *Johnson v. General Motors Assembly Division G.M.C.*, 605 S.W.2d 511, 512 (Mo.App.1980).

■ Grey Eagle's first point is that the evidence is not sufficient because the opinion of the physician who testified on Weinbauer's behalf did not take into account Weinbauer's prior injuries. There was evidence that Weinbauer had tripped while alighting from a barstool, dislocated his right shoulder and lacerated his forehead. On another occasion, Weinbauer had been in an accident while driving a beer truck and bruised his left shoulder and neck. Both of these accidents occurred more than a year and a half prior to August 29, 1977. The physician, Dr. Eli R. Shuter, M.D., testified that had he known of these incidents, he "might" have formed a different opinion

as to his rating of the degree of disability attributable to the incident in question. From this, Grey Eagle argues that the evidence as to causation is speculative and, therefore, not substantial.

Careful reading of Dr. Shuter's testimony shows, however, that he had determined that at the time of the injury which gave rise to this claim, Weinbauer had a "pre-existing osteoarthritic cervical spondylolysis and radiculitis with evidence of compression of the cervical spinal cord and multiple bilateral cervical nerve roots." Weinbauer, whom the ALJ found to be a credible witness, had testified that immediately prior to this accident he felt, "[w]onderful. I worked every day and never missed a day except it might be the flu or cold or something." The ALJ and the Commission obviously found explanation for the rapid deterioration of Weinbauer's health after the incident of August 29, 1977, in Dr. Shuter's testimony that immediately prior to this injury "the osteoarthritic condition had progressed to the point where it was nearly compressing the spinal cord and nerve roots, but had not caused actual compression at the time of the injury. However, when he injured himself the trauma at that time was sufficient to augment the displacement and abnormality caused by the osteoarthritic structures to result in compression and tissue damage at that time." In Dr. Shuter's opinion, Weinbauer's disability was the result of his accident of August 29, 1977; and the ALJ and Commission so found. Our examination of the entire record persuades us that such finding is fully warranted by the evidence and authorized by law. A pre-existing but non-disabling condition does not bar recovery under the Workers' Compensation Law if a work related accident causes the condition to escalate to the level of disability. *Gennari v. Norwood Hills Corporation,* 322 S.W.2d 718, 722–723 (Mo.1959). The words of this Court in *Johnson v. General Motors Assembly Division G.M.C., supra,* 513 are most apposite: "An inherent weakness or bodily defect, such as spondylolisthesis, occurring in conjunction with an abnormal strain, such as claimant suffered here will support a claim for compensation." There was substantial evidence from which the Commission could find that Weinbauer's pre-existing condition did not constitute an impediment to his performance of duties; thus, Grey Eagle's arguments to the effect that the Second Injury Fund, § 287.220, RSMo 1969, should participate in any award are unavailing. See *Kowalski v. M–G Metals and Sales, Inc.,* 631 S.W.2d 919, 921 (Mo.App.1982). Point I is denied.

Appellant's second and third points focus on the exclusion by the ALJ of medical records of Dr. Pasqual Alonso-Yague pertaining to Weinbauer. These records were produced by their custodian (the doctor's bookkeeper) pursuant to a subpoena when the hearing before the ALJ continued on November 30, 1979.[1] The subpoena had been served by Grey Eagle's attorney on November 27, 1979, and the records examined by him at that time. An authorization to inspect the records had been issued by the Commission to Grey Eagle's attorney on November 21, 1979. Weinbauer's attorney objected to the admission of the records on the ground that he had not been furnished with a copy seven days prior to the hearing as contemplated by § 287.210–3, RSMo 1969. The objection was sustained and the records excluded by the ALJ. According to the offer of proof, the records would have shown that Weinbauer consulted with Dr. Alonso-Yague on several occasions between November 1976 and March 1977, and that Weinbauer reported that he had problems similar to those he testified to experiencing after the accident of August 29, 1977, such as numbness in his fingers and involuntary "bouncing" of his left arm.[2]

1. The hearing had convened initially on November 8, 1979, continued the following day and was recessed until November 30.

2. Weinbauer testified at the hearing that he had consulted Dr. Alonso-Yague for "a cold," and that the doctor was Mrs. Weinbauer's physician. Doctor Alonso-Yague asked him many questions, apparently eliciting a medical history. Weinbauer said, "I had never been to him before so he had to write everything down."

Grey Eagle advances a number of arguments in support of its contention that the exclusion of the records constituted error requiring remand of the case to the Commission for the admission of the records and reassessment of all of the evidence in their light. Preeminent among these are the claims that medical records do not come within the general scope of § 287.210, and particularly the "seven day rule" therein contained, that the records should be admissible to impeach Weinbauer's claims of previous good health, and that the records constituted admissions against Weinbauer's interest.

Grey Eagle's contentions that the records do not come within the statute are essentially that the statute does not apply to records of the employee's physician when offered by the employer and that the records are not a "medical report" as defined by § 287.210.[3] At the outset, we note that the portions of the statute quoted in the margin contemplate the offering of *testimony* of a physician, not his records. The records here were treated by the parties as having been qualified and, thus, admissible as "business records." § 490.680, RSMo 1969. Without defining what use, if any, could properly have been made of the records if admitted, we simply address the records on the same terms as the parties, i.e., that the records were the equivalent to the testimony of Dr. Alonso-Yague. Cf. *Springett v. St. Louis Independent Packing Company,* 431 S.W.2d 698, 704[11] (Mo.App. 1968). On such basis, we hold that it is of no consequence that Dr. Alonso-Yague was neither a treating nor examining doctor for purposes of the accident in question or that the records are not "a complete medical report" as defined by § 287.210–5. The salutary purpose of the statute, "that the parties may be commonly informed of all medical findings and opinions" at least seven days prior to a hearing at which any party attempts to place such evidence before the trier of fact received explication in *Johnson v. Park N Shop,* 446 S.W.2d 182 (Mo.App.1969). There it was held that the testimony of a physician called by the employer was properly excluded upon objection of the employee, where no report had been timely served. The physician had neither examined nor treated the employee, "but was to testify from the medical records, x-rays, hospital records reviewed by him and facts hypothesized to him." With respect to § 287.210–3, RSMo 1969 (the same as the section here), the court said:

> It requires *all* medical opinions to be disclosed seven days prior to hearing, including those of examining or treating physicians. "Including" does not mean "limited to." The purpose of this disclosure is specifically set out by the legislature and

---

**3.** The pertinent subsections of the statute are:

3. The testimony of any physician who treated or examined the injured employee shall be admissible in evidence in any proceedings for compensation under this chapter, but only if the medical report of the physician has been made available to all parties as in this section provided. Immediately upon receipt of notice from the division or the commission setting a date for hearing of a case in which the nature and extent of an employee's disability is to be determined, the parties or their attorneys shall arrange, without charge or costs, each to the other, for an exchange of all medical reports, including those made both by treating and examining physician or physicians, to the end that the parties may be commonly informed of all medical findings and opinions. The exchange of medical reports shall be made at least seven days before the date set for the hearing and failure of any party to comply may be grounds for asking for and receiving a continuance, upon proper showing, by the party to

whom the medical reports were not furnished. If any party fails or refuses to furnish the opposing party with the medical report of the treating or examining physician, as in this section provided, upon the objection of the party who was not provided with the medical report, the physician shall not be permitted to testify at that hearing.

\* \* \* \* \* \*

5. As used in this chapter the terms *"physician's report"* and *"medical report"* mean the report of any physician made on any printed form authorized by the division or the commission or any complete medical report. As used in this chapter the term *"complete medical report"* means the report of a physician giving patient's history, complaints, details of the findings of any and all laboratory, X-ray and all other technical examinations, diagnosis, prognosis, nature of disability, if any, and an estimate of the percentage of permanent partial disability, if any.

contemplates full disclosure of all medical evidence to be used at the hearing. The penalties for violation of this disclosure provision are set forth also. When a party is aware that a report has not been furnished he may request a continuance of the hearing so that he may have all reports before being required to proceed with his proof. The failure to provide a report also permits the objecting party to prevent the testimony of the treating or examining physician who failed to submit the report. An examination of the entire section here involved leads us to hold that the legislative intent was to require all medical reports to be exchanged and failure to do so permits exclusion of the testimony of the doctor.

*Johnson, supra,* at 187–188. See also *Springett v. St. Louis Independent Packing Company, supra,* 704–705. For whatever purpose Grey Eagle sought to use the records relating to Weinbauer, it was incumbent upon the employer to comply with the seven day notice requirement or, where that may be impossible by reason of late discovery, to make every good faith effort to ameliorate the surprise. Calling a physician or the custodian of his records to the stand with no prior warning to the other party of what may be expected, clearly is not enough. "We recognize that such a requirement interferes with the element of surprise, but we can not forget that the purpose of all compensation hearings ... is a quiet search for the truth and records that may be of assistance in that process can not be made the subject of a game of hide and seek." *Springett, supra,* 706.

▀▀ Grey Eagle's last two points may be treated together. In these, the assertions are made that the Commission erred in denying the request for a continuance so that the "seven day rule" could be complied with and that the Commission also erred in failing to order the appointment of an impartial physician to examine Weinbauer and report to the Commission. Both of these matters could have been accomplished at the hearing stage before the administrative law judge; neither was requested until after the ALJ had entered his "Findings of Fact and Rulings of Law." Grey Eagle's first request for a continuance, after it became aware that the objection to Dr. Alonso-Yague's records would be sustained, came in the application for review by the Industrial Commission. Grey Eagle's request for the appointment of an impartial physician was even more belated.[4] No request for such an examination was made at the hearing or in Grey Eagle's application for review by the Commission. The first reference to such an examination in the record before us appears in the opinion of the dissenting member of the Commission who observed that the ALJ *"should have considered the possibility* of ordering an independent and impartial examination of the employee ..."* (Emphasis added.) Seizing upon this observation, appellant mentioned the desirability of such an examination for the first time in its motion for rehearing after the Commission had ruled. While it is clear that either the ALJ or the Commission could properly have ordered either or both measures, neither was under an obligation to do so. Given the untimeliness of Grey Eagle's requests, a holding to the contrary would amount to an assertion that it was error for the ALJ in the first instance, and the Commission on review, to do sua sponte that which the appellant failed to request in its own behalf. "The general rule is that a court should not set aside administrative actions unless the agency has been given a prior opportunity, on timely request by the complainant, to consider the point at issue." *Mills v. Federal Soldiers Home,* 549 S.W.2d 862, 868 (Mo. banc 1977). We see no reason to deviate

---

4. Such procedure is authorized by § 287.210–2 which provides in part:

   The commission or the division may appoint a duly qualified impartial physician to examine the injured employee, and any physician so chosen, if he accepts the appointment, shall promptly make the examination requested and make a complete medical report to the commission or the division in such duplication as to provide all parties with copies thereof ... If all the parties shall have had reasonable access thereto, the report of the physician shall be admissible in evidence.

from the "general rule" here. See also *Vickery v. ACF Industries, Incorporated,* 454 S.W.2d 620, 623 (Mo.App.1970); *Klopstein v. Schroll House Moving Co.,* 425 S.W.2d 498, 505 (Mo.App.1968).

The judgment of the Circuit Court is affirmed.

SIMON and SATZ, JJ., concur.