James L. **WEILERT,** (Employee), **Plaintiff-Respondent,**

v.

**FRUIN–COLNON CORPORATION and Insurance Company of North America,** (Employer and Insurer), **Defendants-Appellants.**

No. 33288.

St. Louis Court of Appeals.

Missouri.

Nov. 18, 1969.

Robertson, DeVoto & Wieland, St. Louis, for defendants-appellants.

Timothy G. Noble, St. Louis, for plaintiff-respondent.

DOWD, Judge.

This is an appeal from a judgment of the Circuit Court affirming a workmen's compensation award by the Industrial Commission in favor of the claimant. An award was entered for $5,412.50 for a permanent partial disability and a healing period, less a credit for disability payments paid to claimant in the amount of $3,345.34. The balance now due the claimant under the award is $2,067.16. The employer and insurer appeal.

The extent of the claimant's disability was the issue litigated.

Appellants contend on this appeal that the commission acted without or in excess of its power in striking the entire testimony of Doctor Arthur H. Stein, the treating and examining physician furnished by the employer and insurer. Doctor Stein's testimony was stricken for the reason that two of his reports were not furnished to claimant's attorney even though eighteen reports were furnished.

On January 13, 1965 the scaffold-board on which claimant, a carpenter, was standing, broke and claimant fell twelve feet to the ground and sustained a comminuted, completely displaced fracture of the mid-portion of the right radius. The following day Doctor Stein performed an open reduction with internal fixation. A Rush pin was inserted in the radius and a cast applied to the arm. After the claimant was discharged from the hospital, he was seen by Doctor Stein in 1965 on February 3, March 3, March 31, April 21, May 19, June 18, July 17, September 3, and November 4. Because the "bony union [was] not solid" claimant was readmitted to the hospital in December 1965, and Doctor Stein performed a bone graft operation on the arm. After discharge from the hospital, the claimant was again seen by Doctor Stein in 1966 on February 9, March 9, April 6, May 4, June 1, October 3, and on January 6, 1967.

Doctor Stein testified in detail as to his treatment of claimant and as to the progress of claimant's condition. Doctor Stein rated the claimant's injury at approximately 10% permanent partial disability of the arm at the level of the elbow. Claimant's doctor testified that the claimant had a permanent partial disability of the arm at the wrist of about 30% and at the elbow of about 35%, and a permanent partial disability of the man as a whole of about 5% due to the post-operative scar of his left iliac region.

At the hearing Doctor Stein had all the reports which were furnished the employer and the insurer, and during his cross-examination these reports were given to claimant's attorney, who discovered that the only reports he had not previously received were reports dated July 17, 1965 and September 3, 1965. He asked Doctor Stein whether he used the report of July 17 in his testimony. The doctor replied that he did not use this report in his testimony and that the information contained in this report is "appropo" of his previous testimony. The doctor was then asked whether the report of September 3 was "part of your testimony today." The doctor answered that this report was "only again a running account of the fact the fracture is not uniting and which eventually wound up having some further surgery done on it."

Claimant's attorney then objected to Doctor Stein's testimony on the grounds that he had not been furnished the medical reports dated July 17 and September 3,

and asked that " * * * all of Doctor Stein's testimony on direct and on cross examination be stricken * * *." The referee sustained the objection and struck all the testimony of Doctor Stein stating, "The statute [287.210, (3), V.A.M.S.] I think is quite clear and cold." All of the findings and rulings of the referee were adopted by the Industrial Commission.

Appellants' attorney made an offer of proof and read into the record the reports of July 17 and September 3. The case was taken under submission. The following day the appellants asked the referee for leave to reopen his case " * * * for the purpose of showing 18 medical reports were furnished to Mr. Noble [claimant's attorney]." The referee refused stating, " * * I will be quite free to admit that I have the 18 copies * * *." At the beginning of the hearing the claimant's attorney was asked by the referee whether there was any question about medical reports. Claimant's attorney answered, "As far as I know I have enough, but I'm certainly not going to stipulate that I received all of them, because I don't know what he had. I received some. I assume all the medical reports are going to be used in this hearing, but I'm not going to stipulate that I have them all." Respondent concedes in his brief that the evidence which appellants referred to in the attempt to reopen their case was evidence which had been submitted during the trial of the case and had been rejected after objection of claimant's attorney. The referee acknowledged that he had the 18 reports. It was only after claimant's attorney examined these reports that he found that he had not been furnished the two reports. He made no objection that he did not receive the other 18 reports. Claimant's attorney objected solely on the grounds that he was not furnished reports dated July 17, 1965 and September 3, 1965. It is clear from the record that claimant's attorney received the 18 reports. It was unnecessary for appellants to move to reopen their case to make a record that the 18 reports were furnished.

Defendants admit the reports dated July 17, 1965 and September 3, 1965 were not furnished to claimant's attorney. These 2 reports had been sent by Doctor Stein to Doctor Sutter who had referred the claimant to Doctor Stein.

The 18 reports which were furnished the claimant's attorney are dated as follows:

| | | |
|---|---|---|
| January 13, 1965 | June 18, 1965 | March 9, 1966 |
| January 22, 1965 | November 1, 1965 | April 6, 1966 |
| February 3, 1965 | December 6, 1965 | May 4, 1966 |
| March 31, 1965 | December 30, 1965 | June 1, 1966 |
| April 21, 1965 | January 7, 1966 | October 3, 1966 |
| May 19, 1965 | February 9, 1966 | January 6, 1967 |

Because the issue here is whether the parties were commonly informed of all medical findings and opinions, we believe it important that the medical reports be set out in detail in this opinion.

Doctor Stein was seeing claimant practically every month and was preparing interim or running accounts of his findings as to claimant's condition. There were 7 reports furnished claimant's attorney prior in time to the dates of the 2 reports not furnished. The first report dated January 13, 1965 was detailed and gave the history and the x-ray findings which showed a comminuted completely displaced fracture of the mid portion of the right radius and a statement that the patient would require surgery "which will be an open reduction and internal fixation of the right radius." This report estimated 10 days hospitalization and probable inability to work for 4 to 6 months. The report of January 22, 1965 showed that the claimant was dis-

charged from the hospital with x-rays showing perfect realignment of the fracture. This report also showed that the doctor anticipated that claimant would be in a cast for approximately 3 months. The report of February 3, 1965 showed that claimant was using his hand satisfactorily and had good finger function. The x-rays showed excellent position of the fracture fragments. Report of March 31, 1965 showed that the hand function was good and the fracture line was still evident. Report of April 21, 1965 showed that "There is not much in the way of external callus but the fracture line is definitely hazy, indicating that union is taking place," and stated that claimant was to do no heavy lifting. Report of May 19, 1965 showed that claimant was regaining good wrist, hand, and elbow function and that the fracture line was clearly evident and that "There is no external callus but there does appear to be some haziness of the fracture line suggesting that union is occurring at a slow rate." This report pointed out that there was going to be some delay in union and a decision as to a possible bone graft would be made in 2 months. The report of June 18, 1965 showed that the claimant had regained good function of his elbow, wrist and hand with some tenderness over the fracture site. This report further stated that the x-rays showed that the fracture line was still present but there had been some further new bone formation in the from of periosteal new bone about the fracture site. This report recommended that claimant continue to remain out of the cast, with light use of the hand and that claimant be reevaluated again in about 1 month. The report of July 17, 1965 which was not furnished claimant's attorney showed that the claimant was seen on that date and that he had excellent function of the wrist and elbow and was not complaining of much pain in the forearm. The report further stated that the x-rays showed that there had been some maturation of the callus about the fracture site but the fracture line itself was still clearly evident. The report continued that the claimant was not ready to return to any type of heavy work such as using his hand in carpentry, and that the claimant should be seen again in 1 month. The other report not furnished, dated September 3, 1965 showed that the claimant was seen again on September 3, 1965 and that he still complained of some discomfort about the fracture site and that he had excellent wrist and hand function in the injured forearm. Doctor Stein further stated in this report that he believed "that there is now a fair amount of callus developing across the fracture site and the fracture line is becoming partially obliterated." This report continued: "Although this certainly has been a delayed union I feel that the fracture will probably proceed to union. The patient is not yet ready to return to work as a carpenter. I will see him again in approximately six weeks."

After the dates of the 2 reports not furnished, claimant's attorney was furnished with 11 of Dr. Stein's reports, the dates and important features of which are as follows:

November 1, 1965: Good function of hand, wrist and elbow with tenderness about the fracture site. X-rays showed bony union still not complete and there is now more evidence that this fracture is a serious delay of union and may represent a non-union at this time. It is nine and one-half months since the injury and since bony union is not solid, a bone graft operation is recommended.

December 6, 1965: The bone graft operation to be performed December 29, was discussed with claimant. Doctor felt motion at the fracture site. X-rays showed non-union.

December 30, 1965:  Described the bone graft operation.

January 7, 1966:  A letter enclosing the "operative note" and that claimant had an uneventful post-operative course.

February 9, 1966:  Claimant had adequate function of his hand and bone graft seems to be solidifying about the non-union site.

March 9, 1966:  Fracture line obliterating itself in a satisfactory manner. There is some external callus about the fracture site and an indication that the fracture is now proceeding to union.

April 6, 1966:  X-rays show good callus bridging the fracture site.

May 4, 1966:  Good range of rotary motion of the forearm and wrist. X-rays showed further union of fracture site.

June 1, 1966:  Claimant had essentially full elbow extension and almost normal elbow flexion on the right side but lacked some pronation and supination of right forearm. X-rays showed fracture was now healed and claimant could return to work.

October 3, 1966:  Claimant back at work for 3 months; doing light work; normal range of elbow motion; claimant lacked 30 degrees of full supination of right forearm. X-rays show fracture is solidly united. Rush pin remains in place. Excellent progress since last seen. Some mild atrophy and residual loss of motion in forearm. Can go back to same kind of work.

January 6, 1967:  Final evaluation: loss of 10 degrees of palmar and 10 degrees of dorsiflexion of right wrist. Rotation: lacks 10 to 15 degrees of full supination of right forearm. Function of hand is normal. Scar over iliac crest where bone graft was removed—tender. Claimant has an 8 to 10% permanent partial disability of the right upper extremity rated at the level of the elbow joint.

---

The issue here is whether it is error to exclude and strike the entire testimony of employer and insurer's treating physician for the failure to furnish employee's attorney with the reports of July 17 and September 3. Our review is governed by Section 287.490 RSMo 1959, V.A.M.S., which limits us to a review of questions of law and provides that the court " * * * may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) That the commission acted without or in excess of its powers; * * *." There are three other grounds stated in the statute but they are not pertinent to this appeal.

Decisions of the commission which are clearly the interpretation or application of the law, as distinguished from a deter-

mination of facts, are not binding upon us and fall within our province of review and correction. Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, 65–66; Saxton v. St. Louis Stair Company, Mo. App., 410 S.W.2d 369, 375. The issue here involves the interpretation by the commission of Section 287.210(3) RSMo 1959, V.A.M.S., and is therefore reviewable by this court.

The section of this statute which must be construed by us states:

"3. The testimony of any physician who treated or examined the injured employee shall be admissible in evidence in any proceedings for compensation under this chapter, but only if the medical report of such physician has been made available to all parties as in this section provided. Immediately upon receipt of notice from the division or the commission setting a date for hearing of a case in which the nature and extent of an employee's disability is to be determined, the parties or their attorneys shall arrange, without charge or costs, each to the other, for an exchange of all medical reports, including those made both by treating and examining physician or physicians, to the end that the parties may be *commonly informed of all medical findings and opinions.* Such exchange of medical reports shall be made at least seven days before the date set for the hearing, and failure of any party to comply may be grounds for asking for and receiving a continuance, upon proper showing, by the party to whom the medical report or reports were not furnished. If any party fails or refuses to furnish the opposing party with the medical report or reports of the treating or examining physician or physicians, as in this section provided, upon the objection of the party who was not provided with the medical report or reports, such physician or physicians shall not be permitted to testify at that hearing." (Emphasis ours.)

As was pointed out in Springett v. St. Louis Independent Packing Company, Mo. App., 431 S.W.2d 698, 705, Section 287.210 is one of the discovery statutes under the Workmen's Compensation Act. The court in *Springett* stated at 705: "The intent and purpose of this statute, as its language so clearly indicates, is that both employer and employee be commonly informed of *all* medical findings and opinions and receive a report of all treating and examining physicians."

Were the parties here commonly informed of all medical findings and opinions? A study of the 18 reports furnished and study of the 2 reports not furnished convinces us that the parties were commonly informed of all medical findings and opinions. There was nothing in the reports of July 17 and September 3 which was not covered and included in the reports furnished. The report of June 18 which was furnished and the report of July 17 which was not furnished are almost identical. The report of June 18 states that the patient had regained good function of his elbow, wrist and hand with some tenderness over the fracture site. The report of July 17 states that claimant had excellent function of his wrist and elbow and was not complaining of much pain in the forearm. The report of June 18 states that the fracture line is still present with new bone formation about the fracture site. The report of July 17 states that there has been some maturation of the callus about the fracture site but the fracture line is still clearly evident. Report of June 18 recommends "continued light active use of the hand." Report of July 17 also recommends that the patient "is not yet ready to return to any type of heavy work such as using his hand in carpentry." The report of September 3, 1965 refers to the excellent wrist and hand function with some discomfort about the fracture site and states "that there is now a fair amount of callus developing across the fracture site and the fracture line is becoming partially obliterated," and states that there has been a delayed union but the fracture will probably proceed to union.

The reports of March 31, 1965, April 21, 1965, and May 19, 1965, which are in the

nature of interim reports, all show a delay in the union at the fracture site with the report of May 19, 1965 specifically pointing out there is going to be some delay in union of this fracture with a decision to be made in 2 months regarding a bone graft. The reports of November 1, 1965, December 6, 1965, December 30, 1965, January 7, 1966, February 9, 1966, March 9, 1966, April 6, 1966, May 4, 1966, June 1, 1966, October 3, 1966 continued to inform claimant's attorney of the progress and condition of claimant's arm. The report of January 6, 1967 is the final evaluation and gives Doctor Stein's opinion of the claimant's permanent partial disability. As said before the extent of claimant's disability was the only issue in dispute. Claimant's attorney was not deprived of any medical finding and opinion which was not included and repeated in other reports furnished and was therefore commonly informed of all medical findings and opinions.

■ It was not the purpose of this statute to strike a doctor's testimony because of the failure to furnish 2 cumulative reports which contained the same medical information in substantially the same language as was contained in reports furnished. The commission erred in excluding and striking the testimony of Doctor Stein.

Appellants and respondent both cite Springett v. St. Louis Independent Packing Company, supra which is distinguishable from the case here on the facts and did not involve the same issue. The *Springett* case involved the failure of employer to furnish medical reports of 2 doctors who examined claimant and held that the history of the injury was a part of the medical report and further held that the plant physician was properly precluded from testifying because of employer's failure to furnish claimant with the medical report.

Recently we discussed this statute in Johnson v. Park N Shop, et al., Mo.App., 446 S.W.2d 182 (9/16/69), wherein the report furnished claimant's attorney consisted solely of the report of the x-ray examination, without any history. At the hearing defendants attempted to have the doctor testify to statements made to the doctor by the claimant as to the cause of the injury which statements were contained in the doctor's office records. Defendants' counsel admitted this information was not contained in the reports furnished. The *Johnson* decision was based on the fact that the medical reports were not complete. Here there was complete and full disclosure of all medical findings and opinions.

Attention is directed to a discrepancy in the award. On Revised Form 33, Award on Hearing, there is a finding and award of compensation for permanent partial disability in the sum of $42.50 for 105 weeks. On line 13 of Findings of Fact (Revised Form 31) it is stated: "Exact nature of any permanent injury: *40%* permanent partial disability of the right arm *above the elbow.*" However, on the reverse side of this form under Additional Findings of Fact and Rulings of Law there is a finding of *50%* permanent partial disability of the right arm *above the elbow.* Referring to the Schedule of Losses as set out in Section 287.190(1). RSMo 1959, V.A.M.S., provision is made for loss of arm at shoulder— 232 weeks; loss of arm between shoulder and elbow—222 weeks; loss of arm *at elbow joint*—210 weeks. Nowhere is there scheduled a loss "above the elbow." A finding and award for 105 weeks would be predicated upon 50% permanent partial disability of the arm *at the elbow.*

Accordingly, the judgment is reversed and remanded to the Circuit Court with instructions to enter a new judgment setting aside the award of the Industrial Commission, and remanding the cause to the Industrial Commission to hear, admit, and consider the excluded testimony of Doctor Stein.

WOLFE, P. J., and BRADY, J., concur.