Griffin **HOWARD, Employee-Appellant,**

v.

**FRED WEBER, CONTRACTOR, INC., Employer and Employers Mutual Liability Insurance Company, Insurer, Respondents.**

No. 33745.

St. Louis Court of Appeals,
Missouri.

Feb. 23, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied March 23, 1971.

Application to Transfer Denied May 10, 1971.

Hart & Steinlage, Paul N. Steinlage, Clayton, for respondents.

DOERNER, Commissioner.

The employee, Griffin Howard, appeals from a judgment of the Circuit Court of the City of St. Louis which affirmed a final award of the Industrial Commission of Missouri.

After the contesting parties had entered into various stipulations in the hearing before the Referee on January 10, 1968, the principal issues which remained in dispute were: (1) whether the employee had sustained any permanent partial disability; (2) if he had, the nature and extent of such disability; and (3), whether the employer and insurer were liable for certain medical and hospital expenses claimed to have been incurred by the employee as the result of his accident.

Subsequent to the hearing the Referee entered an award in which he found that the employee's lower back and left foot had been injured in the stipulated accident; that as a result of his injuries the employee sustained temporary total disability for a period of 20 weeks, and permanent partial disability of 10% of his body as a whole referable to the lower back; that the "* * * employee did not sustain any injury to a lumbar disc as testified to by Dr. Lee Ford"; and that the employer and insurer did not refuse to furnish medical treatment to the employee, that in fact the employee incurred medical treatment of his own choosing, and that "* * * Therefore, the employer and insurer are not liable for certain medical expenses as claimed by the employee." The Referee awarded the employee compensation of $950.00 for the 20 weeks healing period, and $1700.00 for the permanent partial disability, or a total of $2650.00, subject to a credit of $2103.57 for compensation previously paid to the employee by the employer and insurer.

W. W. Sleater, St. Louis, for employee-appellant.

Obviously dissatisfied with the Referee's award, the employee filed a lengthy appli-

cation for review with the Industrial Commission of Missouri. Subsequently the Commission entered a final award on its printed form in which it stated that after having reviewed the evidence and considered the whole record, it found the award of the Referee was correct in all respects, and was supported by competent and substantial evidence. The Commission further stated therein that it adopted the Referee's findings of fact, his rulings and conclusions of law, and his decision in favor of the employee, and that it affirmed and adopted the award of the Referee. Thereafter the employee appealed to the Circuit Court of the City of St. Louis, which, as stated, affirmed the final award of the Industrial Commission, and this appeal followed.

In this court the employee contends: (1) that the findings of the Referee and the Industrial Commission are contrary to the overwhelming weight of the evidence; (2) that the Referee and the Industrial Commission erred in excluding that part of the testimony of Dr. Ford concerning certain X-rays taken by him, and concerning an alleged atrophy of the employee's leg; (3) that the award is grossly inadequate; (4) that the Referee and the Industrial Commission were biased and prejudiced against the claimant; and (5), that the Referee erred in his finding that the employer and insurer did not refuse to furnish medical treatment, and that by reason of such refusal the employee is now entitled to be reimbursed for his medical bills. As has been repeatedly pointed out, the scope and extent of our review in an appeal in a compensation case is restricted. Section 287.490, RSMo 1969, V.A.M.S. Recognizing the familiar rule that "Circuit and appellate courts are limited in review of an award of the Industrial Commission to determining whether findings of the commission are supported by competent and substantial evidence; and whether the commission could reasonably have reached its result upon consideration of all the evidence in the light most favor-

able to the award and, if so, they may not substitute their judgment for that of the commission, * * *" Bone v. Daniel Hamm Drayage Co., Mo., 449 S.W.2d 169, 170–171, we consider first those of the employee's foregoing points which relate to the findings of fact in the final award of the Industrial Commission.

■ Regarding the nature and extent of the injuries sustained by the employee as the result of his accident, the principal issue in dispute was whether or not certain discs in the employee's back had been injured. Dr. Lee T. Ford, the employee's medical witness, testified that in his opinion the discs in question had been ruptured. Dr. Henry E. Lattinville, the medical witness for the employer and insurer, testified that in his opinion the discs had not been ruptured. No other medical witness testified for either side. Thus the Industrial Commission had the choice of accepting one or the other of the conflicting medical opinions. It is obvious from its final award that it chose to accept that of the employer's and insurer's doctor, for it specifically found "* * * that employee did not sustain any injury to a lumbar disc as testified to by Dr. Lee Ford." The disputed issue was one "* * * peculiarly for the determination of the Industrial Commission, * * *" Vollmar v. Board of Jewish Education, Mo., 287 S.W.2d 868, 872, and the Commission had the right to choose between the conflicting opinions, Marcus v. Steel Constructors, Inc., Mo., 434 S.W.2d 475; Hawkins v. Nixdorff-Krein Mfg. Co., Mo.App., 395 S.W.2d 247. Of course, we may not substitute our judgment on the evidence for that of the Commission, Dickhaut v. Bilyeu Refrigerated Transport Corp., Mo., 441 S.W.2d 54, 56, and under the circumstances here appearing we cannot say, as contended by the appellant, that the finding of the Industrial Commission is contrary to the overwhelming weight of the evidence. Marcus v. Steel Constructors, Inc., supra; Hawkins v. Nixdorff-Krein Mfg. Co., supra; Greer

v. Missouri State Highway Department, Mo.App., 362 S.W.2d 773.

■ What we have said regarding the rule as to the determination of issues of fact likewise applies to the employee's complaint regarding the adequacy of the award. Based on his opinion that the employee had suffered a rupture of certain discs, Dr. Ford rated the employee's permanent partial disability as 30 to 35 percent of the man as a whole. As stated, Dr. Lattinville testified that in his opinion the discs in question had not been ruptured, and that the employee could return to work without restriction, but other than that he was not asked to, and did not, express any opinion as to the rating to be given to the employee. While the Commission expressly found that the employee had not suffered any injury to his discs, it did find that the employee had " * * * sustained permanent partial disability of 10 per cent of his body as a whole referable to the lower back. * * * *" As was recently said in McAdams v. Seven-Up Bottling Works, Mo.App., 429 S.W.2d 284, 289: " * * * it has been repeatedly said by the courts that the commission is not conclusively bound by or restricted to any percentage estimate stated by doctors and that the extent and percentage of disability is a finding of fact within the special province of the commission to determine. * * * *" In view of the Commission's express finding that the employee had not sustained any injury to his discs, and the opinion of Dr. Lattinville that the employee, a "heavy laborer"—who prior to the accident "did the roughest kind of work" (employee's language) and could "return to work without restriction," we cannot say that the rating determined by the Commission was not supported by competent and substantial evidence, or that it was contrary to the overwhelming weight of the evidence.

■ The third and final question of fact to be reviewed is the finding of the Industrial Commission that the employer and insurer did not refuse to furnish medical treatment to the employee, and that the employee incurred medical treatment of his own choosing. In his brief the employee states:

"The employee went to Dr. Lee Ford only after he was released by Dr. Schopp and Dr. Luh who had been treating him on behalf of the employer and insurer (Tr. 22)."

The cited reference to the transcript does not sustain the employee's claim that he went to Dr. Ford only after he had been released by Dr. Schopp and Dr. Luh. Nor does any other part of the record support that statement. What the employee himself testified to on direct examination, in answer to questions propounded by his counsel, as appears on the cited page 22 of the transcript is as follows:

"Q (Mr. Sleater) Did you go back to Dr. Luh?

"A Yes, sir.

"Q Did he continue to treat you?

"A Yes, he continued to treat me. I don't remember for how long but he did.

"Q Then, what eventually happened with Dr. Luh?

"A Well, Dr. Luh told me that he was going—that he was going to—wanted to release me.

"MR. STEINLAGE: I object, hearsay.

"THE REFEREE: Objection sustained.

"MR. SLEATER: Well, to say the doctor released is not hearsay, that's more of a verbal act.

"THE REFEREE: You say the doctor released you?

"THE WITNESS: No, he didn't release me, he was going to.

"Q (Mr. Sleater) Then, what happened?

"A I told him—I didn't tell him at that time, I went to Dr. Ford."

As both the employee and Dr. Ford testified, the employee had been a patient of Dr. Ford's for an elbow injured in 1952 in a compensable accident. From the foregoing it is clear that neither Dr. Luh nor Dr. Schopp (who practiced together) had refused to treat the employee or had released him and that the employee of his own volition, without notice to either Dr. Luh or to the employer and insurer, elected to obtain further treatment from Dr. Ford, a physician of his own choice. The finding by the Industrial Commission to that effect was fully supported by the employee's own testimony, and under that finding the Commission's conclusion of law that the employer and insurer were not liable for the medical and hospital expenses incurred by the employee is amply supported by the applicable decisions. Gonzales v. Johnston Foil Mfg. Co., Mo.App., 305 S.W.2d 45; Moore v. International Shoe Co., Mo.App., 213 S.W.2d 215; Kopolow v. Zavodnick, Mo.App., 177 S.W.2d 647.

█ During the course of his direct examination the employee stated that in the early part of his treatment by Dr. Ford, at some time which he could not fix, Dr. Ford prescribed a back brace; that he received a bill for the brace; that Dr. Ford told him to forward the bill "to them"; that he did so and that the insurer sent him a check for it. Employee argues that the insurer thereby "approved of the treatment by Dr. Ford," but cites no authority in support of its contention. Neither the bill itself, nor the check, was introduced in evidence, and according to the employee's own evidence Dr. Luh, during the time he was treating the employee, gave him "a support, a girdle." Of course, the Industrial Commission, as the trier of the facts, was the judge of the employee's credibility, and it was not compelled to accept as true the employee's testimony if it did not believe it. Ginter v. Freund Baking Co., Mo.App., 388 S.W.2d 505. Assuming, however, that it did so the evidence does not show whether, from the bill it paid, the insurer was thereby apprised that the brace had been prescribed by Dr. Ford and that he was treating the employee. The employer and insurer had authorized the treatment by Dr. Luh, who had previously furnished the employee with a girdle. The evidence does not show that the insurer was made aware or had knowledge that the employee had ceased to go to Dr. Luh for treatment, or that he had gone to Dr. Ford, at the time it paid for the brace. For all that appears in the evidence the insurer may have thought, when it paid for the brace, that it had been prescribed by Dr. Luh. In this state of the record we cannot say, as a matter of law, that in paying for the brace the insurer thereby approved of the employee's treatment by Dr. Ford.

█ Employee asserts, as previously stated, that the Referee and the Industrial Commission erred in excluding Dr. Ford's testimony regarding X-rays taken by him, and regarding a claimed atrophy of the calf of the employee's left leg, " * * * as the reports furnished to the insurer and on file with the Workmen's Compensation Commission, encompassed this testimony, as no new injury or disability not on the reports was brought in by this evidence." According to the record before us, Dr. Ford first saw the employee on March 22, 1966, in connection with this claim, and last saw him on September 7, 1967. In the interim the doctor saw the employee at least thirteen more times. If the doctor's reports were on file with the Commission, as the employee states, they were not included in the transcript before us, but copies have been attached to the employee's brief as an appendix, and the employer and insurer have not voiced any objection to that action. While the doctor testified at the hearing to having treated the employee on at least fifteen occasions,

the copies of his reports attached to the employee's brief were but five in number, and it is apparent that the doctor did not make a report each time he saw the employee. For example, although the doctor saw the employee, according to his testimony, on March 22, April 11, April 28, May 17, June 7, July 11 and August 8, 1969, his first report, which refers to his examination on March 22, is dated August 10, 1966. At the hearing, when Dr. Ford started to state what was shown on X-rays taken by him, the employer and insurer objected on the grounds that the reports made by Dr. Ford made no mention of any X-rays. The Referee sustained the objection, but in all other respects permitted the doctor to testify as to the results of his examination, his diagnosis, and the course of treatment given to the employee. We have carefully examined each of the copies of Dr. Ford's reports appended to employee's brief and, as the employee tacitly concedes, not one of them refers in the slightest to any X-ray or to any claimed atrophy of the employee's leg. In view of Section 287.-210, as construed in Weilert v. Fruin-Colnon Corp., Mo.App., 447 S.W.2d 781; Johnson v. Park N Shop, Mo.App., 446 S.W.2d 182, and Springett v. St. Louis Independent Packing Co., Mo.App., 431 S.W.2d 698, we hold that neither the Referee nor the Industrial Commission erred in excluding the doctor's testimony concerning the X-rays or the atrophy. We emphasize that only such testimony was excluded, and that in all other respects the doctor testified fully regarding his numerous examinations of the employee, the employee's complaints the diagnosis made of the claimed injured discs, and the treatment given. Furthermore, regarding the contested issue of ruptured discs, the doctor had performed both a myelogram and later a discogram of the employee, and testified at length as to what they showed, and that in his opinion they revealed the rupture of the discs in question.

■ The final point for consideration, as stated in the employee's brief, is that, "The Referee and the Industrial Commission were biased and prejudiced against the claimant, and the claimant did not have a fair and impartial trial * * *." There may be some question as to whether such a claim for relief falls within the scope of our review in a compensation case as delineated in § 287.490. However, the right to a fair and impartial hearing before a judge or other trier of fact is so basic to our system of jurisprudence as guaranteed by art. 1, §§ 10 and 14 of our Constitution of 1945, V.A.M.S., that when, as here, such a denial has been questioned we would be inclined to adopt a broad construction of the scope of review granted us by § 287.-490.

The record before us shows that the Referee heard the employee's claim on January 10, 11 and 17, 1968, and rendered his award on February 8, 1968. On February 27, 1968, the employee filed his application for review with the Industrial Commission in which he complained, among other matters, that "The referee was biased and prejudiced against the employee, * * *" and alleged that immediately before the hearing began the referee was heard to remark that he was about " * * * 'to try a case about some nut.'" On June 10, 1968, the affidavit of the employee, dated May 7, 1968, was filed with the Commission, in which the employee deposed:

"2. On the 10th day of January, 1968, he was seated in the waiting room of the Workmen's Compensation Commission at 503 Buder Bldg. in St. Louis when a man whom he later learned to be Referee John Ancona was standing at the information desk at the front of the waiting room. A girl was seated at the desk, but Referee Ancona was talking to another man. Affiant overheard him say, among other things, that his next case is with, 'some kind of a nut.'

"3. Shortly thereafter—in a matter of minutes—Referee Ancona called Affiant's lawyer into his room to start the trial of the case."

The transcript shows that at the very beginning of the hearing before the Referee on January 10, 1968, the Referee asked the employee's counsel whether he was ready for trial, and that counsel answered in the affirmative. A careful examination of the transcript reveals that neither at that time, nor at any other time during the hearing, did the employee or his counsel object to the Referee conducting the hearing, or make any claim that the Referee was biased and prejudiced, and the first reference to that subject was in the employee's application for review, after the Referee had made the award of which the employee complained. In that application for review the employee did not ask the Industrial Commission for the opportunity to appear before the Commission, nor did he ask the Commission to hear further evidence, as it was authorized to do, Lake v. Midwest Packing Co., Mo., 301 S.W.2d 834. The final award of the Industrial Commission, made on November 8, 1968, was, as stated, in general terms. Neither in the application for review, nor at any time subsequent to the final award, did the employee ask the Industrial Commission to make a specific finding regarding the employee's claim that the Referee had been biased and prejudiced.

Since the Industrial Commission had before it the employee's claim, in his application for review, supported by his affidavit, that the Referee had been biased and prejudiced, we can only regard the Commission's final award as a rejection and overruling of the employee's claim that the Referee was biased and prejudiced. Considering the record as a whole, we are of the opinion that the Industrial Commission could reasonably have arrived at that conclusion. In reaching that conclusion it may have taken into account the fact that at the start of the hearing the employee raised no objection to having his case heard before the Referee in question, and that no claim of bias and prejudice was made until after the Referee had made his award. Furthermore, if the Commission believed that the Referee had made the remark attributed to him (and it was not incumbent on it to do so), it is by no means certain from the employee's affidavit that the Referee had reference to the employee. For the affidavit itself shows that some time elapsed before the hearing of the employee's case began ("—in a matter of minutes" is far from being definite) and the Referee's "next case" may not have been that of the employee's. And of even greater importance, the Industrial Commission undoubtedly carefully reviewed the record of the evidence before it and concluded, from the record, that the Referee acted judiciously at all times, that his conduct of the hearing was fair and impartial, and that whatever may have been his personal opinion of the employee (if in fact he made the remark, and if he referred to the employee) the award he made was amply supported by competent and sufficient evidence. Other than the claimed remark, the employee does not point out anything in the record to substantiate his claim of bias and prejudice on the part of the Referee, and our review of the record disclosed none.

The only grounds given by the employee to support his claim that the Industrial Commission was biased and prejudiced is that the affidavit of the employee was not initially included with the papers sent by the Commission to the Circuit Court, upon the employee's appeal. For that matter, neither were the reports of Dr. Ford, which as the employee stated, were filed with the Commission. The application for review, in which the employee had alleged the Referee's bias and prejudice, and his same grounds, was included, so that the issue was before the court. We regard the lack of inclusion of the affidavit as in the same category as that of the lack of inclu-

sion of the medical reports, as a mere clerical oversight.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this Court. Accordingly, judgment affirmed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.