Euhel ODER (Employee), Plaintiff-Respondent,

v.

ST. JOE MINERALS CORP., Defendant-Appellant.

No. 34138.

Missouri Court of Appeals, St. Louis District, Division Two.

Aug. 15, 1972.

Roberts & Roberts, Farmington, for plaintiff-respondent.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, Edward J. Bust, W. Oliver Rasch, Bonne Terre, for defendant-appellant.

KELLY, Judge.

This is an appeal from a judgment of the Circuit Court of St. Francois County affirming a final award of the Industrial Commission awarding the employee, Euhel Oder, the total amount of $12,237.50, for injuries sustained in an accident suffered while in the course of his employment and arising therefrom.

The employer contends that the Circuit Court erred in affirming the Final Award of the Industrial Commission because: 1) the Referee and the Industrial Commission erred in admitting evidence and considering in support of their award the opinion of a physician, Dr. William Paul Dennis, M.D., that claimant's myocardial infarction was precipitated by smoke inhalation on January 10, 1969, over the repeated objection of employer that no report of Dr. Dennis had been furnished the employer, and that his testimony was admissible only to the extent his findings and opinions appeared in the Discharge Summary of the Bonne Terre Hospital Record which was the only information furnished the employer on the subject; and 2) that the testimony of one of the physicians offered by the claimant, Dr. A. J. Steiner, M.D., did not constitute competent and substantial evidence that claimant's myocardial infarction was caused by smoke inhalation.

In reviewing an appeal from the Industrial Commission our duties are restricted to determining whether, upon the entire record, the Industrial Commission

could have made the findings and award it did in fact make. If the award is supported by competent and substantial evidence upon the whole record we must affirm. All the evidence and reasonable inferences deducible therefrom must be viewed in the light most favorable to the findings and the award and we must disregard all opposing and unfavorable inferences even though the findings of the Commission, if to the contrary, would also have been supported by the evidence. The weight to be given to the evidence in the case rests with the Industrial Commission and it alone may decide upon the credibility of the witnesses. Where the competent evidence or permissible inferences are conflicting, it is for the Industrial Commission to choose which it shall believe, and its choice is binding upon this Court.

Viewing the evidence and the reasonable inferences deducible therefrom in the light most favorable to the findings and the award, claimant, Euhel Oder, a man 60 years of age, had been employed by the St. Joseph Lead Company since 1942. On Friday, January 10, 1969, he was an operator of a locomotive at employer's #17 Mine in St. Francois County, Missouri. He arrived at the "change room" at around 6:00 a. m. that morning feeling fine although he had a cold. His health prior to January 10, 1969 had been good. At 20 minutes to 7:00 he went "underground" and commenced his job as a locomotive engineer. Nothing unusual happened until sometime between 12:30 and 1:00 o'clock in the afternoon when a fire broke out. A creosote cross-arm with a switch-block—"a fire block"—and a rubber cable burned. Claimant was "laying by", that is, stopped by a red light of the block-signal system, waiting for another train to pass. He was not permitted to move his locomotive in the face of a red light. He and his locomotive were on the main line in what is called a "drift". The smoke from the fire came down on him and became so thick that even with his light shining on it he could only see about an arm's length. It was

dense, heavy smoke, very dense, and he was exposed to this heavy dense smoke for about 30 minutes. Although he used his radio to get clearance to move out of the lay-up without the red light being changed, he was not given permission to do so. While in this smoke he "began to get the fidgets" and did not know what to do. He got off the locomotive and attempted to get out of the smoke but wherever he went the smoke was just as bad. He found an old piece of waste—threads and stuff with which they dust off the motors—and he wet this and held it over his nose to help him breathe. He was not able to breathe too well in the smoke; panted like a dog and felt like he was smothering. He coughed and gagged and broke out in a cold sweat. He became weak and did not know what was going on. Breathing caused him to have pain and to be discomforted; he felt nauseous. When the block signal cleared he took the train to the dump, returned and parked his train. This took him 15 to 20 minutes. He then prepared to leave work. He became more sick all the time and "threw-up". Later he felt like he was going to vomit again and he continued to sweat. Before he left the Mine he reported to his foreman that the smoke had made him ill. He went home.

That evening, after his son came home, claimant was driven to the office of a Dr. Dennis in Flat River, Missouri. He arrived there a little after 4:00 p. m. Claimant complained to Dr. Dennis of nausea and epigastric pain and gave a history of smoke inhalation in an underground fire at his place of work that day. Dr. Dennis' examination revealed congestion of the pharynx, some tenderness of the upper abdomen and a low grade fever. The Doctor prescribed an analgesic injection to help with the nausea and prescribed some other medicines to help settle claimant's stomach. The Doctor advised the claimant to go straight home, take the medicines and go to bed.

Claimant remained in bed until early the following Monday morning, January 13,

1969. All the time he choked more and more and had pain in his back and chest. Finally, early Monday morning, January 13, 1969, he had to get up and walk in the yard and swing his arms to get his breath. At about 12:45 a. m. that morning, he was admitted to the Bonne Terre Hospital where he was hospitalized for twenty days.

On his admission to the hospital he complained of epigastric pain in the upper abdomen and lower chest which had become more severe since he was first seen at Dr. Dennis' office on January 10, 1969. He was put on oxygen and analgesics, "the usual things for a suspected coronary." Dr. Dennis at that time, had formed an opinion that the claimant was having a coronary. Blood tests were conducted and electrocardiograms and x-rays were made at the Bonne Terre Hospital during this term of hospitalization. Dr. Dennis' Discharge Summary diagnosis was myocardial infarction secondary to arteriosclerotic heart disease and smoke inhalation causing acute gastritis, pharyngitis and bronchitis. The only indication of smoke inhalation found by him was "some injection of the pharynx." After the claimant left the hospital Dr. Dennis continued a course of treatment by keeping him at minimal activity and on coagulants. During the period of recuperation Dr. Dennis felt claimant was having cardiac decomposition, i. e., the heart action fails to maintain the circulation properly and patient develops a pulmonary congestion and a passive congestion of the liver. Other symptoms of this condition present at this time were shortness of breath and fast heart rate. He prescribed digitalis and this condition improved. It was his opinion that the claimant's acute myocardial infarction was precipitated by the smoke inhalation in the Mine on January 10, 1969 and that claimant therafter suffered a pulmonary embolism.

Dr. A. J. Steiner, a specialist in diseases of the heart and lungs, examined claimant at his office on the 24th day of November, 1969. At that time he had the benefit of Dr. Dennis' "report" and the Bonne Terre Hospital Records. He corroborated the opinion of Dr. Dennis that the claimant suffered a myocardial infarction as a result of the occurrence of the smoke inhalation of January 10, 1969 and a bronchial irritation as a complication to the myocardial infarction. He rated the claimant at 75% impairment of a man as a whole because of the cardiac problems and 5% of a man as a whole because of the inhalation bronchitis, a total disability of 80% of a man as a whole.

Employer's medical witness, Dr. Martin W. Davis, was "willing to accept" the diagnosis of myocardial infarction; however, it was his opinion that this condition was in no way related to exposure to smoke at work on January 10, 1969, but occurred on January 12, 1969. He was not "very firm in that opinion" and based it upon the failure of the claimant to state that he had immediate chest pain when he inhaled the smoke on January 10, 1969.

Claimant returned to work on November 6, 1969. His job at the time of the hearing required him to sit at scales, weigh trucks as they drive over the scales and write down the weight. He, at that time, engaged in no physical activities because when he did he would get out of breath; climbing stairs caused him to puff and when walking any distance upgrade he was short of wind.

■ The employer's first contention is that since the claimant did not furnish it with a copy of a medical report of Dr. Dennis other than the Discharge Summary which appears in the Bonne Terre Hospital Records, and said Discharge Summary did not contain an opinion of Dr. Dennis that the claimant's myocardial infarction was caused or precipitated by smoke inhalation, the Referee and the Industrial Commission erred in accepting said opinion in evidence and making their award thereon. The employer also contends that such testimony by Dr. Dennis is in direct conflict with the

information contained in the Discharge Summary.

While it is specifically provided in Sec. 287.210(3) R.S.Mo.1969, V.A.M.S., as amended, that the testimony of any physician who treated or examined an employee is admissible in evidence only if the medical report of the physician has been made available to all parties within seven days of the hearing, in this instance the employer did not see fit to interpose an objection to exclude the tesimony of Dr. Dennis on that grounds. In the discussions between the opposing counsel and the Referee preliminary to the taking of testimony on July 8, 1970, the following colloquy occurred.

"The Referee: Are there any preliminary motions?

"Mr. Roberts: I think it is stipulated and agreed that subject to objections that will be made, the deposition of Doctor Dennis may be supplied in the record at a later date. * * *

"Mr. Bust: Yes, that's correct. And the objection referred to by Mr. Roberts on the deposition of Dr. Dennis is that employer has been furnished no medical report by the claimant from Doctor Dennis; that the only report or information in our possession from Doctor Dennis is part of a Bonne Terre Hospital record, titled Discharge Summary, signed by Doctor William Paul Dennis. *And our objection will be that Doctor Dennis' testimony will be limited to the information as contained in this Discharge Summary?* (Sic) Is that correct, Mr. Roberts?

"Mr. Roberts: The Discharge Summary and the hospital records are the only records we have received." (Emphasis ours.)

A discussion then ensued concerning whether Dr. Dennis was a Company doctor or not, and after counsel for the employer stated that he was the claimant's physician since Dr. Dennis treated claimant on a private-patient basis and any treatment afforded claimant was not authorized nor paid for by the employer, the Referee stated: "In view of that fact, I feel, Mr. Roberts, and do so at this time sustain that objection."

Subsequently on the 18th day of August, 1970, when the deposition of Dr. Dennis was taken, counsel for the employer, Mr. Bust, immediately after the witness identified himself, made the following statement into the record of the deposition:

"Mr. Bust: Excuse me just a moment, Clint. At this time I'd like to state that at the hearing held in Farmington I made an objection that Dr. Dennis should not be permitted to testify in this case as to anything except as to the information contained in part of the Bonne Terre Hospital Record, one sheet designated 'Discharge Summary,' and signed by Dr. W. Paul Dennis; this objection was sustained by Referee Ragland at that time."

On August 21, 1970, the deposition of Dr. Dennis was filed with the Referee and sometime in September, 1970,—the date does not appear in the transcript—employer filed a motion to strike certain questions propounded to Dr. Dennis and his answers thereto on the grounds that "the following portions of said deposition consist of testimony giving patient's history, complaints, details of findings of laboratory, x-ray and other technical examination, diagnosis, prognosis, nature of disability, and estimate of the percentage of permanent partial disability not contained in said 'Discharge Summary.'" This motion to strike then proceeded to enumerate those portions of the deposition the employer desired stricken. The Referee denied "motion to Strike Claimant's Exhibit C, the deposition of Dr. W. P. Dennis, M.D.," and then proceeded to rule on some 20 specific objections to portions of Dr. Dennis' testimony, overruling all but 2 of the objections. One answer in its entirety and a portion of a second answer were ordered stricken and we conclude were not considered by the Ref-

eree or the Industrial Commission in arriving at the award.

Because of the form of employer's objection we need not consider whether or not the entire testimony of Dr. Dennis might have been disallowed or stricken from the record by the Referee, nor whether the "Discharge Summary" contained in the Bonne Terre Hospital records met the standards for a "medical report" as defined in Sec. 287.210(5) R.S.Mo.1969, V.A.M.S. The only question now before us in this respect is whether or not the Referee and the Industrial Commission considered testimony of Dr. Dennis which was outside the scope of the "Discharge Summary."

Employer's position is that the Referee and the Industrial Commission in arriving at their award took into consideration the answer of Dr. Dennis to two hypothetical questions propounded to him by counsel for the claimant which went beyond the scope of the matters contained in the Discharge Summary furnished the employer. In the first instance the hypothetical question submitted incorporated the claimant's smoke inhalation episode of January 10, 1969, his subsequent complaints up to the time he entered the hospital, the tests made at the hospital and the results obtained, and asked if the claimant suffered a myocardial infarction and later a blood embolism. In the second instance claimant's counsel asked the Doctor to assume certain facts in evidence, and whether based upon these facts there was a direct causal relationship between the smoke inhalation and the development of the heart difficulty. Doctor Dennis then answered that in his opinion the myocardial infarction was precipitated by the smoke inhalation. In addition to the continuing objection that Dr. Dennis' testimony be limited to matters covered in the Discharge Summary, employer's counsel interposed a specific objection to both hypothetical questions, that the questions as asked did not hypothesize sufficient facts on which to base an opinion the Doctor was asked to give. He did not, however, state what facts he thought need be included but stood on that objection.

Employer's attack is twofold: first, the opinion thus elicited by claimant's counsel was not contained in the Discharge Summary furnished the employer and therefore could not be received in evidence; and, second, the opinion elicited was directly contrary to the Discharge Summary, in that the Summary stated that the myocardial infarction was secondary to arteriosclerotic heart disease, that the latter condition was of undetermined age, and that the smoke inhalation caused only acute gastritis, pharyngitis and bronchitis.

A reading of the Discharge Summary of Dr. Dennis demonstrates without a doubt that the hypothetical questions in the form propounded at the taking of the deposition are not contained in the Discharge Summary. However, we do not construe the statute nor the ruling of the Referee as narrowly as employer would have us do. We are not unmindful of the previous decisions of this Court in Springett v. St. Louis Independent Packing Company, Mo. App., 431 S.W.2d 698 and Johnson v. Park N Shop, Mo.App., 446 S.W.2d 182, where this statute was construed to uphold the ruling of a Referee which excluded the testimony of physicians on the grounds that they had not furnished the opposing side a report or portions thereof containing that which they were sought to be interrogated about. Weilert v. Fruin-Colnon, Mo.App., 447 S.W.2d 781, is controlling under the facts of this case. In Weilert we held that it was not error to refuse to strike the entire testimony of employer's doctor who treated and examined claimant on the ground that two of the doctor's reports were not furnished to claimant's attorney when eighteen other reports of the same doctor were furnished and the two missing reports contained the same information regarding claimant's injuries that was contained in the reports which were furnished. Weilert, supra, held that where the parties were commonly informed of all the medical findings and opinions, the fail-

ure of the physician to furnish two reports of twenty which were merely cumulative of the other eighteen would not justify striking of his testimony for failure to comply with the statute.

■ Nowhere in the controlling statute is there any requirement that the complete medical report must contain a hypothetical question and the opinions based thereon. Sec. 287.210(5) R.S.Mo.1969 amended, V.A.M.S. As stated there: " 'complete medical report' means the report of a physician giving patient's history, complaints, details of the findings of any and all laboratory, X-ray and all other technical examinations, diagnosis, prognosis, nature of disability, if any, and an estimate of the percentage of permanent partial disability, if any." To hold as the employer would have us do would mean that one must foresee with absolute foresight exactly what the evidence is going to be at trial, so advise the physician, and have him phrase both the question and the answer accordingly in his report if he is going to be permitted to testify in reply to such a hypothetical question. Then if the evidence fails to live up to expectations at trial, the question could not be asked nor answered because of a change of factual support, not covered in the medical report furnished the opponent. Sec. 287.210(3) (5), R.S.Mo.1969 Amended, V.A.M.S., is a discovery tool and its intention is that both employer and employee be commonly informed of all medical findings and opinions and receive a report of all treating and examining physicians, prior to the hearing. We are here faced with a trial situation where the form and content of the question must conform to the evidence either actually in evidence at the time the question is propounded, or where permitted, will be in evidence before the party rests. To sustain employer's position would be to effectively destroy the hypothetical question in the trial of the case, and this we are not prepared to do.

■ As was stated in Weilert, supra, the real question to be decided is: "Were the parties here commonly informed of all medical findings and opinions?"

Both the employer and the claimant had the "Discharge Summary" prepared by Dr. Dennis and both had the complete medical records of the Bonne Terre Hospital. The "Discharge Summary" is an integral part of the Bonne Terre Hospital records and is contained in Claimant's Exhibit B which came into the record without objection and by stipulation was furnished at a date subsequent to the hearing. This "Discharge Summary" prepared by Dr. Dennis did, in fact, include every item required by Sec. 287.210(5) R.S.Mo.1969 Amended, V.A.M.S., to constitute a "complete medical report" with the exception of "an estimate of permanent partial disability, if any," and explicit "prognosis". In his deposition Dr. Dennis did not give the claimant a permanent partial disability rating because when asked for an opinion of the claimant's "present disability" replied that at that time he had not made a percentagewise estimate of the man's "present disability" and nowhere in the deposition was he requested to give an estimate of permanent partial disability.

Dr. Dennis testified from the "Discharge Summary" prepared by himself, and this did include some history, his interpretation of the tests administered in the hospital and recorded in his "Discharge Summary", and he explained the discharge diagnosis contained in the "Summary." It was his opinion that employee suffered an acute myocardial infarction and a pulmonary embolus and that the heart involvement—the myocardial infarction—was precipitated by the event of the smoke inhalation.

The Bonne Terre Hospital Records—Claimant's Ex. B—contained an "Authorization to Inspect and/or copy Medical Records" authorizing claimant's attorney to inspect the hospital records; a ledger sheet of the miscellaneous hospital charges; the controverted one page Discharge Summary; a two page History sheet

signed by Dr. Dennis; two pages of Progress Notes in Dr. Dennis' handwriting; two pages of Laboratory Reports; five pages of Electrocardiographic reports signed by a Dr. Richard R. Fraser, M.D.; and two x-ray Requisition and Report forms signed by Dr. Mark D. Eagleton, M.D.

Both the employer and the claimant had the same medical information as to the findings and opinions of Dr. Dennis in their possession as well as the Bonne Terre Hospital records. They were, therefore, commonly informed of all medical findings and opinions as required in Weilert, supra.

■ The most pressing point made by employer with respect to Dr. Dennis' testimony is directed to the Diagnosis contained in the "Discharge Summary." It reads as follows:

"DIAGNOSIS

410 Myocardial infarction secondary to;

412 Arteriosclerotic heart disease.

087.9 Smoke inhalation causing;

535 Acute gastritis.

462 Pharyngitis.

466 Bronchitis."

The employer contends that Dr. Dennis' testimony that claimant's myocardial infarction was precipitated by smoke inhalation is in direct contradiction to the Diagnosis aforesaid and therefore misled the employer. While one must concede that gramatically the punctuation of the "Diagnosis" in the Discharge Summary creates an ambiguity, we must recognize it for what it is, medical shorthand, and we find it difficult to believe that the employer was really misled and deceived by the manner in which this entry was punctuated. A simple examination of the "Claim for Compensation" filed on September 25, 1969, in the Division of Work-men's Compensation would advise the employer that the claimant was claiming that the exact nature of any permanent disability was: "Acute myocardial infarction and pulmonary embolus." Further, in the same Claim in describing how the injury occurred, he stated: " * * * Employee required to remain in smoke extended period causing heart attack, myocardial infarction and lung damage." Further, in the "Answer to Claim for Compensation" the employer pleaded that it was without knowledge or information sufficient to form a belief as to whether employee suffered a coronary heart attack, but, if so, employer denied that the claimant suffered or sustained a coronary heart attack as a result of an accident arising out of or in the course of his employment. Subsequently, in an Answer filed by the employer it denied that the claimant suffered or sustained any injury to his heart or lungs, or either of them, as a result of an accident or occupational disease arising out of or in the course of his employment. While the form in which the Diagnosis in the "Discharge Summary" prepared by Dr. Dennis might be used for the purpose of cross-examining him in an effort at impeachment, it is not such as would preclude him from giving the testimony in explanation of it as he did at the taking of the deposition for later use by the Referee and the Industrial Commission.

It should also be noted, that employer was well aware of the position of the claimant that the smoke inhalation precipitated the heart attack at the time of the hearing since it was represented by counsel when the deposition of Dr. A. J. Steiner, M.D. was taken on behalf of the claimant on the 30th day of June, 1970, some 8 days prior to the hearing. At that time Dr. Steiner expressed the opinion that there was a causal relationship between the smoke inhalation and the occurrence of the claimant's heart attack. In view of the circumstances aforesaid having held that the "Diagnosis", at most,

created an ambiguity and not a contradiction to the testimony of Dr. Dennis, we do not believe that the employer's contention that it was misled is supported by all of the evidence. If employer, in view of the information available to it so desired, it could have made a demand upon the claimant to furnish it with another or less ambiguous diagnosis.

We, rule, therefore, that the Referee and the Industrial Commission did not err in considering the testimony of Dr. Dennis.

■ The employer next contends that the testimony of Dr. Steiner, one of the claimant's medical witnesses, does not constitute competent and substantial evidence that the claimant's myocardial infarction was caused by smoke inhalation. It takes the position that Dr. Steiner's opinion is not based upon reasonable medical certainty, but only upon mere possibility; that his opinion is based upon unsupported assumptions and speculation regarding the claimant's health and physical condition prior to the fire; and that there is a contradiction in the testimony of the claimant as to his health on the morning of the fire which precludes his recovery of the award.

The claimant had the burden of showing the causal connection between the smoke inhalation and his myocardial infarction, and to competently do this he had to present qualified medical experts who would so testify. For this purpose he produced both Dr. Dennis and Dr. Steiner. At no time were the qualifications of these physicians challenged by the employer. The employer contends that the opinion of Dr. Steiner was not based upon reasonable medical certainty, but only on mere possibility. It seizes upon a question and answer propounded by its counsel on cross-examination of Dr. Steiner to support its position. However, a close study of the question, reveals that the question was directed towards what "studies" about the effect of smoke inhalation show about precipitation of a

heart atatck. The question was as follows: "Q. Doctor, have there been studies made which would indicate, that, to a degree of medical certainty, smoke inhalation does precipitate a heart attack of this kind, or is that considered only a medical possibility?" Dr. Steiner's answer was: "I think it's a medical possibility." However, earlier in his testimony Dr. Steiner reviewed the history of the onset of this hospitalization of the claimant, the results of the numerous tests administered in the hospital including the LDH, SGOT, blood count, sedimentation rate, x-rays made at the Bonne Terre Hospital and x-rays taken by himself or at his request, the electrocardiograms made at the hospital and one made at his office and then described their significance in arriving at his diagnosis and opinions. Viewed in the light of his testimony and the inept framing of the question under consideration, we conclude that this answer of the witness would at best go to the weight to be given his opinion by the Referee and the Industrial Commission, and we do not hold that it is without probative force.

■ When claimant's counsel directed a hypothetical question to Dr. Steiner on the issue of causation, employer's counsel merely objected to the form of the question "on the grounds that it does not give sufficient facts and detail the facts sufficiently upon which to base the opinion you have asked the doctor to give." Since he did not preserve the point that the words "based upon reasonable medical certainty" were not included in the question at the time it was asked he did not preserve the point for review and we may not now consider it.

■ Dr. Steiner answered the hypothetical question as follows: "Well, yes, I think that there was a causal relationship between the smoke inhalation and the occurrence of this man's heart attack." Employer states that this answer does not exhibit the required medical certainty to be

of any probative value. It relies on Welker v. MFA Central Co-operative, Mo.App., 380 S.W.2d 481, 486. However, in Collier v. St. Louis Public Service Co., Mo.App., 298 S.W.2d 455, we approved the use of the word "think" where it indicated the formation of a judgment or opinion and held that the term should not have been rejected as without force as opinion testimony. See also: Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295, l. c. 300. In this proceeding we conclude that when taken with the entire testimony of Dr. Steiner this response is more than guesswork and speculation and was properly received.

▮ Employer further attacks the testimony of Dr. Steiner because it assumed as a pertinent factor upon which he based his conclusion that the claimant was not feeling well on the morning of the occurrence when he reported for work. This statement attributed to the claimant appears in the "Discharge Summary" prepared by Dr. Dennis, and in Dr. Steiner's testimony both on direct and cross-examination. Claimant in his testimony stated that he was "feeling fine" when he reported for work on January 10, 1969. He denied, on cross-examination, any remembrance of telling Dr. Steiner that he wasn't feeling well when he went to work that morning, and said he did tell Dr. Dennis when he saw him on the afternoon of the 10th that he felt like he had a little cold. The hypothetical questions propounded to Dr. Steiner did not include any assumption concerning how claimant felt when he appeared for work on the morning of January 10, 1969; however, after he answered the hypothetical question claimant's counsel asked him to explain "what you think are the pertinent indications or the pertinent matters upon which you base this opinion?" The doctor answered: "Well, one part of the history stated that Mr. Oder was not feeling well on the date this happened. At age—I think it was sixty, this could be in keeping with his having some trouble at that time, cardiacwise. In my physical examination I

found a blood pressure elevation to 190/100, which may have been present for some time before this occurrence. The inhalation of smoke over a period of half an hour produced a lack of oxygenation in Mr. Oder, and this lack of adequate oxygen, coupled with excitement and fear, normal reactions to fire, added to what he probably had originally, was sufficient to produce a heart attack." The evidence left no doubt that claimant had arteriosclerotic heart disease which preceded the occurrence of January 10, 1969, and on cross-examination by employer's counsel, Dr. Steiner testified that he thought a major blood vessel was involved on the day that the underground fire occurred and the epigastric tenderness fitted in with his opinion. However, he was not asked whether or not his opinion would have been changed if claimant felt good that morning. Therefore, we hold that this inconsistency in the history as related by Dr. Steiner and the remembrance of claimant denying that history, would at best go to the weight to be given Dr. Steiner's opinion as to causation. We therefore rule this point against the employer.

▮ Employer's last contention is that Dr. Dennis' testimony does not support the Award in that it fails to show by admissible, competent and substantial evidence that claimant's heart attack was caused by smoke inhalation. To support its position employer reiterates the grounds of his earlier points that the diagnosis contained in the Discharge Summary conflicted with his testimony that the myocardial infarction was precipitated by smoke inhalation and that this testimony was erroneously admitted and considered. The employer takes the position that without this testimony there was nothing to support the Award. Our ruling that this testimony was admissible and was not in conflict but rather in explanation of the ambiguity of the diagnosis in the Discharge Summary disposes of this point. We find that with this evidence properly before the Industrial Commission there was admissible, competent

**498**

and substantial evidence that employee's heart attack was caused by smoke inhalation.

DOWD, P. J., and SMITH and SIMEONE, JJ., concur.

The judgment is affirmed.